UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN J. JERUE and MICHAEL J. FEIST,

      Plaintiffs,

v.                           Case No. 8:17-cv-00587-EAK-AEP

DRUMMOND COMPANY, INC.

      Defendant.

_____/

## MOTION TO DISMISS OR, ALTERNATIVELY, STAY PLAINTIFFS' CLAIMS

      Defendant Drummond Company, Inc. ("Drummond") moves to dismiss or, alternatively, stay the Amended Complaint ("AC") filed by Plaintiffs John J. Jerue and Michael J. Feist.

### Introduction

      Mr. Jerue and Mr. Feist are the only two residents who have sued Drummond.  Many residents justifiably object to the Plaintiffs' false and misleading characterization of their neighborhoods.[1]  These two Plaintiffs have failed to allege any current testing that would reflect unsafe levels of radiation in the development, and rely on out of date information from decades ago.  More importantly, they have failed to allege any bodily injury or physical property damage.  As a result, Plaintiffs have failed to establish an "injury in fact" that is required in order to maintain a lawsuit under the U.S. Constitution.  *See Hudder v. City of Plant City*, 2014 WL7005904 (M.D. Fla. Dec. 10, 2014).  Mere alleged exposure to radiation does not constitute an injury.  *Morgan v. W.R. Grace & Co.*, 779 So. 2d 503 (Fla. 2d DCA 2000)(alleged radiation exposure from former

---

[1] This mischaracterization includes the irresponsible and wholly unsupported assertion in the AC (and at a recent "town hall" meeting conducted by the Plaintiffs' battery of lawyers) that the residents' homes are "unfit" for residential use.  AC ¶ 78.

phosphate mining failed to state a claim); *Eagle-Picher Indus. Inc. v. Cox,* 481 So. 2d 517 (Fla. 1986) (risk of contracting cancer in the future is not actionable); *Jacobs v. Osmose, Inc.*, 2002 WL 34241682 (S.D. Fla. 2002) (mere exposure without injury is not actionable).  Plaintiffs' claims require bodily injury or physical property damage, which they have failed to allege.  *Monroe v. Sarasota County School Board,* 746 So. 2d 530 (Fla. 2d DCA 1999)(tort law standards protect "person and property from physical injury"); *Lucarelli Pizza & Deli, LLC v. Posen Constr., Inc.*, 173 So. 3d 1092 (Fla. 2d DCA 2015) (physical property not damaged; no recovery for economic losses); *Virgilio v. Ryland Group, Inc.*, 680 F. 3d 1329 (11th Cir. 2012)(duty element of tort law limits claims unless "Plaintiff has suffered personal or property damage," not merely economic losses); *Lawrie v. Ginn Dev. Co., LLC*, 2014 WL 4788067 (M.D. Fla. Sept. 19, 2014) (no physical property damage from allegedly inflated property values).  Plaintiffs' hypothetical exposure claims lack any actual injury.  However, by making such irresponsible allegations, these two individuals have themselves damaged their neighbors' property values and their community's good name.

The AC does a further disservice to the community by asserting that the possible radiation effects from phosphate lands were known and kept quiet.  Nothing could be further from the truth. The AC acknowledges numerous publicly filed documents that disclose Drummond's prior mining and reclamation efforts.  Public documents also show that Drummond spent considerable resources to reclaim and subsequently develop these valuable communities in compliance with an approved development plan.  This record was available for inspection and review by members of the public, the media, and potential residents.

As part of the extensive public record, Drummond specifically disclosed its mining and reclamation activities in every deed that was issued to purchasers, and contained in the chain of title for all subsequent purchasers.  The two Plaintiffs in this case were subsequent purchasers from

third parties, not from Drummond.  However, their chain of title clearly includes disclosures from Drummond that:   1) the property was previously mined for phosphate rock; and 2) reclaimed phosphate lands have "**potential adverse impacts due to radon gas emissions or other radiation effects considered possible to occur on such lands**."   Drummond Properties Development Agreement at ¶¶ 2, 16 (emphasis added).   Ex. B.  This disclosure became part of the official record of every property transfer in Oakbridge and Grasslands, including the chain of title for these two Plaintiffs.  This information is properly imputed to the Plaintiffs.  As the Florida Supreme Court has held:

> Knowledge of clearly revealed information from recorded documents contained in the records constituting a parcel's chain of title is properly imputed to a purchasing party, based upon the fact that an examination of these documents prior to a transfer of the real property is entirely expected.

*M/I Schottenstein Homes, Inc. v. Azam*, 813 So. 2d 91, 95 (Fla. 2002).  Further:

> Where the pleadings of the parties make it evident that reliance on the part of a purchaser was not justified as a matter of law, a trial court may certainly be correct in ruling as a matter of law that no cause of action exists.

*Id.*  The public record, chain of title, and clear ruling from the Florida Supreme Court require that this case be dismissed.

No court in Florida has ever affirmed an award of damages to a homeowner because his residence was built in a development that was formerly mined for phosphate.  Florida precedent soundly rejects this claim.  *Morgan v. W.R. Grace & Co.,* 779 So. 2d 503 (Fla. 2d DCA 2000)(no basis to recover for home built in formerly mined area of Lakeland).  As a result, there is no recognized tort or statutory liability based on passive exposure to gamma radiation associated with formerly mined phosphate lands.  These Plaintiffs are asking the Court to create a completely new

claim that does not exist under Florida law.  This Court should reject this request as contrary to Florida law.

In addition, Plaintiffs have made absolutely baseless assertions that they were defrauded by Drummond.  Not only have Plaintiffs failed to allege fraud and misrepresentation with particularity, they cannot make such allegations in good faith because they did not purchase from Drummond.  Thus, Drummond could not have made any false statements of fact that allegedly induced Plaintiffs to purchase their properties, and no particular statements have been alleged.

Plaintiffs' claims are also barred by the applicable statute of limitations and statutes of repose.  According to the Plaintiffs, the mining and reclamation acts that caused the so-called "contamination" occurred "by at least 1975," and allegedly made the land "unfit for residential development due to the presence of radioactive materials."  AC ¶ 78.  This was over four decades prior to filing suit.  Most importantly, the statue of repose related to Plaintiffs' soil conditions is an absolute ten-year bar with no exceptions.  These Plaintiffs purchased their homes more than ten years prior to filing suit.

After having an opportunity to amend their pleadings, Plaintiffs have failed to correct the glaring deficiencies in the original Complaint.  The only real change is that Plaintiffs have downplayed their numerous prior allegations concerning radon gas exposure.  ¶ 12, Given the clear Florida law concerning radon notices, Plaintiffs apparently recognized that the radon claims were frivolous.  See Fla. Stat. 404.056. Plaintiffs have now emphasized unsupportable allegations concerning gamma radiation, yet acknowledge that radon gas and gamma radiation emanate from the same source – Radium 226.  AC ¶¶ 9, 12, 13, 48, 68.  However, Plaintiffs have failed to allege that the current levels of gamma radiation encountered in the development are  in any way harmful to Plaintiffs. No specific illness has been linked to any gamma radiation, nor would it be feasible

4

to draw such a connection.  As in *Jacobs*, the Plaintiffs' failure to allege how they were exposed, and the specific effect on them personally, requires dismissal of all claims, including the medical monitoring claims.  Plaintiffs have done nothing more than sensationalize their allegations in the hopes of creating fear and unjustified safety concerns.  This Court should dismiss the AC with prejudice in order to bring these baseless claims to an end.

In the alternative, the Court should stay all proceedings until Plaintiffs comply with the statutory requirements of Fla. Stat. § 558.004, which provides for pre-suit inspection and disclosure in cases involving alleged improvements to real property.

## Legal Standard and Request to Take Judicial Notice

After eliminating the boilerplate and legal conclusions, this Court should dismiss Plaintiffs' AC because it fails to state a plausible claim for relief.  *Stanfield v. SunTrust Bank*, 2016 WL 8999279*3 (M.D. Fla. March 2, 2016).  This Court may consider the documents referenced in the AC as well as take judicial notice of official public property records and public agency documents. *Shockley v. EMC Mortg. Corp.*, 459 Fed. Appx. 821 (11th Cir. 2012) (property records); *Serpentfoot v. Rome City Commission*, 322 Fed. Appx. 801, 807 (11th Cir. 2009) ("[A] district court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a Rule 56 motion."); *Chapman v. Abbott Laboratories*, 930 F. Supp. 2d 1321, 1323 (M.D. Fla. 2013) (granting request for judicial notice of drug labels publicly available on FDA website in connection with a motion to dismiss); *Thomas v. Alcon Laboratories,* 116 F. Supp. 3d 1361, 1365 (N.D. Ga. 2013) ("The Court is permitted to take judicial notice of documents made publicly available by a government entity").

Drummond has submitted the relevant deeds to Jerue's and Feist's properties from the Official Records of Polk County.  See Exs. A-F.  These deeds clearly demonstrate 1) the

Drummond disclosure in the chain of title which is imputed to Plaintiffs as a matter of law; 2) the fact that Plaintiffs purchased from third parties and not from Drummond, thus eliminating any basis for fraudulent or negligent misrepresentations, failure to warn, or other claims related to the sale of the property; and 3) the date of sale for statute of limitations and statute of repose purposes. Drummond requests that the Court take judicial notice of these official records because they are dispositive of Plaintiffs' claims and will assist the Court in resolving this case.

<u>**Plaintiffs' Allegations**</u>

<u>Drummond's Mining Activities in the 1970s</u>

The AC alleges that Drummond's mining activities and "inadequate reclamation" caused elevated levels of radiation.  AC ¶¶ 22-26.  This activity took place "by at least 1975."  AC ¶ 78. As alleged:

> ¶ 78.  Based on these EPA and DOE reports and testing results, Drummond knew, or should have known, **by at least 1975** that the land comprising the Class Area Communities in Polk county, Florida **were contaminated and the contamination of the land and the health threats that it posed made the land unfit for residential development due to the presence of radioactive materials on, in, and around these properties**.

(Emphasis added.)  To be clear, nothing in the AC alleges any action taken by Drummond other than its original excavation of phosphate rock and reclamation.  There is no allegation that Drummond discharged any chemical, petroleum, or other substance onto the property.  In essence, the phosphate was removed and the property was reclaimed.  This is nothing more than traditional mining and reclamation activity.  The mining activity allegedly causing "contamination" was completed "by at least 1975."  *Id.*

The AC alleges that Jerue's property is located at 805 Summerfield Drive, Lakeland, Florida.  AC ¶ 28.  The chain of title for Jerue's property reflects that Drummond sold the property to Edward and Nicole Kwasnick on September 10, 2001.  Ex. A.  The Kwasnicks' deed

incorporates the Drummond Properties Lakeland Development Agreement in Exhibit A, paragraph 7. The Drummond Development Agreement is contained in the Official Records and attached into as Exhibit B. The Kwasnicks later sold to Jerue on May 4, 2004. Ex. C. The Drummond Development Agreement is part of Jerue's chain of title.

Feist is alleged to own property at 651 Grasslands Village Circle, Lakeland, Florida AC ¶ 29. The chain of title reflects that Drummond sold to Helena Mahias on December 3, 2004. Ex. D. Helena Mahias sold to Rekha Holdings, LLC on August 31, 2005, and likewise incorporated the Drummond Development Agreement. Ex. E. Rekha Holdings, LLC gave a Quitclaim Deed to Feist on March 31, 2006. Ex. F. It also appears that Feist had an ownership interest in Rekha Holdings, LLC because he was the Rekha Holdings' owner who signed the Quitclaim Deeds as "Grantor." See Ex. F. Thus, Feist had an interest in the property as of August 31, 2005. Ex. E. The Development Agreement in Plaintiffs' chain of title fully discloses that their properties are located on previously mined phosphate land with possible adverse radiation effects:

> 2. The Drummond properties were previously mined for phosphate rock and have been under reclamation during recent years.
> ***
> 16. Drummond agrees to utilize ventilated crawl space, monolithic slab or other control technology (such as post-tension stress slabs) as approved by HRS in construction for all proposed dwelling units **on reclaimed phosphate lands in order to mitigate any potential adverse impacts due to radon gas emissions or other radiation effects considered possible to occur on such lands.**
>
> **The purpose of this section is to establish control technology to reduce the expose of the occupants of a residential structure to the influx of radionuclides into the structure by use of certain building techniques.** These building techniques shall be mandatory for the construction of all residential structures authorized by this Agreement and shall be included in the plans submitted to the appropriate permitting agency in Lakeland before a permit is granted and construction begins.

Ex. B at ¶¶ 2, 16 (emphasis added).

<u>Failure to Allege Bodily Injury or Physical Property Damage</u>

Plaintiffs fail to allege bodily injury resulting from the alleged exposure to radiation caused by Drummond.  They allege a "health risk," but fail to claim any bodily injury whatsoever.  AC ¶¶ 7,8, 9, 25, 31.  Plaintiffs likewise fail to allege physical property damage because radiation exposure does not cause property damage.  Instead, Plaintiffs' so-called property damage claim is just another way of saying that persons who occupy the property are allegedly exposed to gamma radiation.  The property itself is not physically damaged; it is merely the location of the alleged exposure.  Accordingly, the alleged loss of use or value is only related to exposure, without alleging any actual physical damage or bodily injury.

<u>Failure to Allege Testing or Levels of Radiation on Plaintiffs' Property</u>

Plaintiffs allege in conclusory fashion that they have been exposed to unsafe levels of radiation. However, Plaintiffs alleged gamma levels are based on 40-year old data.  They fail to allege any <u>current</u> levels of radiation on their specific properties.  Drummond noted the lack of current test results in its first motion to dismiss, filed on April 6, 2017 (Doc. 10).  One can only conclude from Plaintiff's continued silence that Plaintiffs have *no* current test results to support their allegations.[2] There are no allegations that harmful levels of radiation are even present in Plaintiffs' houses or anywhere on their specific properties.  Plaintiffs do not even allege that their specific properties contain inadequately reclaimed materials or that the mining activity affected pre-existing radiation levels in this phosphate rich part of the state.  Plaintiffs make no allegations that any toxic materials were deposited on their specific properties by Drummond.

---

[2] In the AC, (and in the "town hall" meeting), Plaintiffs made it clear that they are relying on 40 year old test results.

<u>Failure to Allege Particular False Statements of Fact by Drummond</u>

The AC alleges that Drummond "assured the public" of the safety of formerly mined lands, but never alleges any particular false statements of fact.  The AC fails to allege even one single statement made to Plaintiffs by Drummond, much less a false statement of fact that Plaintiffs supposedly relied on.  Furthermore, the AC fails to allege any particular statements made by Drummond to *any* putative class members.  The promotional material quoted in the AC does not make any representations of fact concerning any safety issues related to formerly mined lands.

**<u>Legal Argument</u>**

I.  <u>The AC Fails to State a Plausible Claim for Relief or Article III Injury in Fact.</u>

Plaintiffs allege exposure to gamma radiation but no bodily injury or physical property damage.  The AC only alleges exposure and the mere possibility that such exposure could cause an unspecified injury in the future.  The law is clear that a complaint should be dismissed when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1950 (2009).  In the only case to reach a Florida appellate court on this issue, the court affirmed dismissal of tort and statutory claims against a former mine operator for the same type of mining and reclamation activity as alleged in this case. *Morgan v. W.R. Grace & Co.*, 779 So. 2d 503 (Fla. 2d DCA 2000).  In *Morgan*, the Plaintiff resided in Lakeland, Florida, and alleged:

> that her home is unsafe because of radiation from uranium and other radioactive material in the soil.  **<u>She provided no factual detail in her complaint concerning the level or type of radiation</u>**.  She did not claim that any governmental regulatory body has declared her home unsafe or ordered any clean-up.  She did not explain why, when, or how she came to decide that her property was radioactive.  Her complaint *****505** did not allege how long she has lived in this home, from whom she purchased the home, or when that purchase occurred.  The developer and the builder of the home were not sued or identified.
>
> ***

9

> **Ms. Morgan sued W.R. Grace claiming only that it mined and reclaimed this land at some unspecified earlier time.**
>
> <div align="center">* * *</div>
>
> **Significantly, her pleadings did not allege that she sustained any bodily injuries or traditional property damage.** Her many counts all requested the same relief – "the cost of cleanup of the property so that radiation exposure is returned to background level, the reduced value of the property, damages resulting from the impact of public fear of radiation contamination, and … emotional distress as a result of the knowledge that she and her family are being exposed to harmful levels of radiation.
>
> <div align="center">* * *</div>
>
> **We conclude that the trial court properly dismissed with prejudice each of these claims, with the exception of the negligence claim, which should have been dismissed without prejudice.**

779 So. 2d 504-505 (emphasis added).  The appellate court also ruled that plaintiff's "nebulous complaints have not adequately alleged a claim in negligence."  779 So. 2d at 507.  Ms. Morgan failed to allege personal injury or property damage and failed to state a claim beyond pure speculation.  As in *Morgan*, Plaintiffs' failure to allege "any bodily injuries or traditional property damage" requires dismissal of the AC.  Florida law is clear that there is no liability simply because a defendant "mined and reclaimed [plaintiff's] land at some unspecified earlier time."  *Morgan*.  Mere exposure without injury is not actionable.  In a similar case, *Jacobs v. Osmose, Inc.*, 2002 WL 34241682 (S. D. Fla. Jan. 3, 2002), the court dismissed the individual and class claims because plaintiff failed to adequately allege his own injury and could not rely on conclusory allegations related to the putative class members.  In *Jacobs*, the plaintiff alleged nothing more than his home deck was made of plywood allegedly contaminated with toxic chemicals, and that he was "exposed" to such chemicals.  As the court stated: "outside of conclusory allegations, the Amended Complaint does not include any factual allegations concerning Mr. Jacobs' injuries as a result of contact with Treated Wood."  *Id. at *1*.  In this case, Plaintiffs have failed to allege a "concrete

and particularized" injury resulting from Drummond's specific acts that allegedly harmed Plaintiffs.

Despite the fact that Plaintiffs purport to allege a class action, the law is clear that they must have personal claims for relief independent from putative class members. Both named Plaintiffs must have individual standing based on individual injuries. *Vega v. T-Mobile USA, Inc.*, 564 F. 3rd 1256, 1265 (11th Cir. 2009); *Prado-Steinman v. Bush*, 221 F. 3rd 1266, 1279 (11th Cir. 2000)("[i]t is not enough that the [alleged] conduct … will injure someone."). Generic "class allegations" cannot substitute for the requirement that the Plaintiffs actually suffer a concrete injury that rises above the level of "mere possibility." *Ashcroft*. The court in *Jacobs* reached the same result and dismissed the case because plaintiff did not have standing to assert an individual claim. As a result, Plaintiffs' allegations are defective.

A plaintiff cannot recover damages based on alleged enhanced risk of contracting cancer in the future. *Eagle-Pincher Industries, Inc. v. Cox*, 481 So. 2d 517, 520 (Fla. 3d DCA 1986); *Landry v. Florida Power & Light Corp.*, 799 F. Supp. 94, 96 (S. D. Fla. 1992) ("Plaintiff may not recover for an enhanced risk of contracting cancer in the future."); *Jacobs v. Osmose, Inc.*, 2002 WL 34241682, *3 (S.D. Fla. 2002) ("A plaintiff cannot recover damages merely for increased risk of contracting a disease in the future absent some claim of actual injury."). Mere enhanced risk of future harm is not a present compensable injury. *Id.* "Any recovery for cancer damages must await the actuality of cancer." *Cox* at 521. "Allowing recovery of risk of cancer damages not only encourages anticipatory lawsuits but runs counter to the desirable goal that cases be decided on the best quality evidence available and that jury verdicts speak the truth." *Id.* at 523. "The effect of requiring the premature claim for risk of cancer damages is to deny the fact-finder the most

accurate evidence about the cancer – when it in fact developed and the extent of the disease – and to encourage highly speculative testimony." *Id.*

Finally, Plaintiffs' failure to allege actual injury from alleged radiation also reflects that there is no "injury in fact" required by Article III. *Hudder v. City of Plant City*, 2014 WL 7005904 (M.D. Fla. Dec. 10, 2014). This requires actual or imminent harm, not the speculative risk of future harm. In this case, the only alleged harm is that the alleged exposure may cause some increase risk of injury in the future. This risk of future injury is not sufficient to create an injury in fact.

II.  <u>Statute of Limitations and Statute of Repose Bar Plaintiffs' Claims.</u>

    A.  <u>All Claims are Barred.</u>

Plaintiffs allege "exposure" and a "risk" of injury because they live in a formerly mined area. As discussed above, Plaintiffs have failed to allege an injury in fact. However, to the extent the Court finds that Plaintiffs have alleged injury of some kind, their claims are barred by the applicable statutes of limitations and statutes of repose. The applicable statute of limitations is four years on all of Plaintiffs' claims. Fla. Stat. § 95.11. A cause of action accrues when the last element constituting the cause of action occurs. Fla. Stat. § 95.031; see *Krawchenko v. Raymond James Fin. Serv., Inc.*, 2013 WL 489088 (M.D. Fla. 2013). Plaintiffs fail to allege any acts by Drummond that caused unsafe levels of radiation other than the original mining and reclamation activity, which occurred "by at least 1975." ¶ 78. Jerue's publicly filed deed reflects that he purchased his property on May 4, 2004, over twelve years before the lawsuit was filed. Feist obtained a Quitclaim Deed on March 31, 2006, over eleven years before he was added to this suit. Feist was also the "Grantor" for Rekha Holdings, which means that he had an interest in the property as of August 31, 2005. As a result, both Plaintiffs' claims were filed well beyond the four-year statute of limitations.

B.   Fraudulent Concealment Does Not Apply.

Plaintiffs allege that the statute of limitations should be equitably tolled as a result of "fraudulent concealment."  ¶ 105.  This assertion is contradicted by Drummond's disclosure in the chain of title. See Exs. A-F.  Plaintiffs were clearly informed of the "potential adverse impacts due to radon gas emissions or other radiation effects considered possible to occur on such lands."  Ex. B.  Moreover, Plaintiffs' claims are not subject to the delayed discovery doctrine.  *Raie v. Cheminova, Inc.*, 336 F.3d 1278 (11th Cir. 2003); *Krawchenko v. Raymond James Fin. Servs., Inc.*, 2013 WL 489088 (M.D. Fla. Feb. 8, 2013).  Likewise, Plaintiffs' claims do not qualify as "continuing torts." *Black Diamond Properties, Inc. v. Haines*, 69 So. 3d 1090 (Fla. 5th DCA 2011) (A continuing tort is "established by continual tortious <u>acts</u>, not by continual harmful effects from an original completed act.") (citations omitted).  There is no allegation in the AC that Drummond engaged in any tortious acts after the original mining and reclamation activities over 40 years ago.

C.   Failure to Plead Fraudulent Concealment with Particularity.

Rule 9(b) applies to alleged fraudulent concealment alleged in an attempt to toll the statute of limitations.  *In re Photochromic Lens Antitrust* Litigation, 2011 WL 13141933 (M.D. Fla. Oct. 26, 2011).  Even assuming for the sake of argument that fraudulent concealment could apply, this doctrine requires particular allegations that would demonstrate <u>willful</u> <u>concealment</u>. *Wachovia Bank v. Tien*, 658 Fed. Appx. 471, 476 (11th Cir. 2016).  This would require Plaintiffs to plead the details of specific fraudulent statements made by Drummond and reasonably relied on by the Plaintiffs.  Pleading such details requires Plaintiffs to specifically allege the "who, what, when, where, and how" of each such statement.  *Principal Bank v. First American Mortgage, Inc*., 2012 WL 473507 (M.D. Fla. Feb. 14, 2012).  It also requires Plaintiffs to allege that they reasonably relied on particular statements made by the defendant.  As the court stated in *Burr v. Phillip Morris USA Inc.*, 2012 WL 5290164 (M.D. Fla. Sept. 28, 2012):

Under the doctrine of fraudulent concealment the "statute of limitations will be tolled when it can be shown that fraud has been perpetrated on the injured party sufficient to place him in ignorance of his right to a cause of action or to prevent him from discovering his injury." *Nardone v. Reynolds,* 333 So. 2d 25, 39 (Fla. 1976), *modified on other grounds, Tanner v. Hartog,* 618 So. 2d 177 (Fla. 1993). In order to establish fraudulent concealment, plaintiff must allege and establish 1) successful concealment of the cause of action, 2) fraudulent means to achieve that concealment, and 3) plaintiff exercised reasonable care and diligence in seeking to discover the facts that form the basis of his claim. *See Berisford v. Jack Eckerd Corp.,*[3] 667 So. 2d 809, 811–12 (Fla. 4th DCA 1995). Defendant contends that this cannot be established because Plaintiffs complaint is bereft of any allegations necessary to plead fraudulent concealment. For support, Defendant relies on *Raie v. Cheminova Inc.,* 336 F.3d 1278 (11th Cir. 2003). In *Raie,* the Eleventh Circuit declined to conclude whether fraudulent concealment may toll the statute of limitations for a wrongful death claim. *Id.,* at 1282 n. 1. Instead, the Eleventh Circuit rejected plaintiff's argument that fraudulent concealment tolled the Statute of Limitations for the asserted wrongful death action because plaintiff's complaint did "not allege any specific acts of misrepresentation or concealment that could support a claim of fraudulent concealment." *Id.*

Plaintiffs have failed to allege specific facts to meet this heightened pleading standard. Indeed, no such facts can be alleged because the AC discloses that the material facts have been disclosed to the public for decades and are contained in Plaintiffs' chain of title.

D.      Statute of Repose.

The statute of repose for claims involving improvements to real property is ten years, with *no exceptions*. Fla. Stat. § 95.11(3)(c). ("In any event, the action must be commenced within 10 years after the date of actual possession by the owner, the date of the issuance of a certificate of occupancy, the date of abandonment of construction if not completed, or the date of completion or termination of the contract between the professional engineer, registered architect, or licensed contractor and his or her employer, whichever date is latest.") In this case, the publicly recorded deeds show that Jerue purchased his house in May 2004 and Feist obtained a quitclaim deed in

March 2006. Exs. A-F. Plaintiffs clearly claim that Drummond improperly prepared the site for residential use without adequate reclamation. ¶¶ 2, 8, 9, 22, 23, 24, 30, 31, 42, 43, 47. These allegations bring the claim squarely within the 10-year statute of repose. Plaintiffs' claims are based on an allegedly latent defects in the condition of the soil. The radiation risks associated with the site were disclosed to Plaintiffs at the time they purchased the property based on the extensive public record and chain of title. However, solely for the sake of argument, even in the absence of disclosure, any claims were extinguished no later than 10 years after Plaintiffs took possession of the property. This would be May 4, 2014 for Jerue and no later than March 31, 2016 for Feist. (Feist actually had an interest in the property as of August 31, 2005.) Accordingly, these claims are absolutely barred by the statute of repose. Equitable tolling does not apply to the statute of repose. *Dusek v. J.P. Morgan*, 832 F. 3rd 1243 (11th Cir. 2016).

The statute of repose for fraud and negligent misrepresentation claims is twelve years, regardless of the date of discovery. Fla. Stat. § 95.031. This bars Jerue's claims, assuming solely for the sake of argument that any alleged misrepresentations were even made to Jerue. It could also bar Feist's claims if he had alleged fraud with particularity.

III.  Count I – There is No Statutory Liability.

Count I alleges strict liability under Chapter 376, which was enacted as the Water Quality Assurance Act of 1983, modeled after the federal Clean Water Act. It became effective in July, 1983. The AC alleges the presence of radiation as a result of mining activity in the 1970s that caused alleged contamination "by at least 1975." AC ¶ 78. Thus, the statute does not apply to any activity that predates the effective date, which fully encompasses the so-called contamination of the site. Further, radiation does not constitute "pollution" as defined under the statute. Drummond did not "discharge" any pollutant onto Jerue's property. The alleged contamination is alleged to be a pre-existing condition of the mining and reclamation activity.

15

The statute was designed to protect pollutive discharges into Florida coastal waters, ground water, and surface waters. It was never intended to cover passive radiation that exists naturally on former phosphate areas or resulting from ordinary mining and reclamation of phosphate lands. No Florida appellate court or Eleventh Circuit decision has ever imposed liability under Chapter 376 on a former owner of property that engaged in phosphate mining and reclamation activities. The AC would create a wholly new and inappropriate application of the statute.

Liability under the statute requires "damages resulting from a _discharge_ or other _condition of pollution_ covered by §§ 376.30 – 376.319." Fla. Stat. § 376.313(3) (emphasis added). The statute does not define passive radiation as a discharge of pollution. Fla. Stat. § 376.301(36)(37). "Pollution" is defined as the presence of "pollutants." _Id. at (37)._ "Pollutants" are defined as petroleum products and "pesticides, ammonia, chlorine, and derivatives thereof, excluding liquefied petroleum gas." _Id. at (36)._ Therefore, passive radiation does not qualify as pollution or a "condition of pollution." Likewise, the excavation of phosphate and replacement of materials as part of the reclamation process does not qualify as a "discharge" of pollution or "condition of pollution." In order to qualify as a "condition of pollution," there must first be "pollution" under the statute, which is lacking in this case. The appellate decisions construing Chapter 376 all involve the discharge of a petrochemical or other substances defined under the statute. The discharge either spills into surface water or migrates through ground water. See _Curd v. Mosaic Fertilizer, LLC_, 39 So. 3d 1216 (Fla. 2010) (waste water from a phosphate plant (not involving passive radiation) discharged into Tampa Bay); _Adinolfe v. United Technologies Corp._, 768 F.3d 1161 (11th Cir. 2014) (toxic chemicals migrated into groundwater of neighboring development). In this case, Plaintiffs are clearly complaining about the alleged effects of passive radiation, not the discharge of pollution onto any surface water or groundwater. Moreover, the passive radiation

is alleged to result from prior mining and excavation activity, not from a discharge by Drummond onto Plaintiffs' property.  This does not qualify as a discharge or other condition of pollution on Plaintiffs' property under Chapter 376.  Moreover, Plaintiffs even fail to allege that Drummond discharged or placed any material whatsoever onto their specific property that caused them damages, as required by the statute.  This is a critical failure of the AC, because it fails to satisfy the basic elements of Chapter 376.

IV.  Count II – Plaintiffs have Failed to Allege Claims for Negligence and Negligence Per Se.

Plaintiffs fail to allege that they purchased their houses from Drummond.  The chain of title makes it clear that these two Plaintiffs purchased from unrelated third parties.  Instead, Plaintiffs' allege tort liability on the fact that Drummond was a "prior owner" of the land that engaged in ordinary mining and reclamation activity.  A common law claim for negligence under Florida law requires "a duty, breach of that duty, causation, and damages." *Virgilio v. Ryland Group, Inc.,* 680 F.3d 1329, 1339 (11th Cir. 2012).  Plaintiffs fail to properly allege a valid duty.  There is no tort duty in Florida of a prior owner who did nothing more than mine and reclaim phosphate land, even if  the formerly mined land has gamma radiation emanating from the underlying rock.  *Morgan.*  Plaintiffs have likewise failed to allege bodily injury or physical property damage as required by *Morgan* and other decisions.  See *Jacobs v. Osmose, Inc.*, 2002 WL 34241682 (S. D. Fla. 2002); *Morgan v. W.R. Grace & Co.*, 779 So. 2d 503 (Fla. 2d DCA 2000); *Virgilio*, (diminished property value is an economic loss, not property damage); *Lucarelli Pizza & Deli, LLC v. Posen Const., Inc.*, 173 So. 3d 1092 (Fla. 2d DCA 2015) (physical property not damaged; no recovery for economic losses); *Lawrie v. Ginn Dev. Co., LLC*, 2014 WL 4788067 (11th Cir. Sept. 19, 2014) (no tangible property damage).

Loss of value and alleged clean-up and restoration are economic damages, not physical property damage.  *Morgan*, 779 So. 2d at 505; *Virgilio*, 680 F.3d at 1340.  Because Plaintiffs fail

to allege bodily injury or physical property damage, they have no claim for negligence or an alleged duty to warn.

Moreover, the Eleventh Circuit rejected a claim under Florida law for negligence based on an alleged duty to warn resulting in diminished property values.  In *Virgilio*, Plaintiff sought damages from third parties who did not sell the house, but who were engaged in development of the neighborhood.  The claim related to an alleged failure to warn of a former bombing range known as "Pinecastle" located next to Plaintiff's property.  The Eleventh Circuit ruled that non-sellers could not be held liable for a failure to disclose or failure to warn of the neighboring condition that allegedly resulted in diminished property values:

> Plaintiffs would have us hold that entities engaged in creating a residential community by subdividing the land and selling lots to builders for the construction of houses for sale by the builders to the public are liable to the purchasers of those houses for the economic loss they suffer because—as a result of negative information possessed by the entities but not the purchasers—the price they paid for the houses turned out to be more than their fair market value once the information became public knowledge.  Plaintiffs have found nothing to support such a holding in the Florida case law, but they insist that the Florida Supreme Court would reach that conclusion were it to review the allegations of Count 4.
> ***
> We find Plaintiffs' argument—that because Defendants developed and marketed Vista Lakes, they had a duty to warn prospective purchasers of Pinecastle's existence—without merit.

*Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329 (11th Cir. 2012).   Thus, Drummond did not owe a duty to warn as  a matter of law.[3]

In additions, a negligence per se claim asserts a violation of a "statute which establishes a duty to take precaution to protect a particular class of persons from a particular injury or type of injury."  *deJesus vs. Seaboard Coastline R. Company*, 281 So. 2d 198, 201 (Fla. 1973).  Although

---

[3] Ironically, if any loss of value has occurred, it is the result of Plaintiffs' unfounded allegations in this lawsuit, not any action or omission by Drummond.

the AC references a claim for "Negligence Per Se," the Plaintiffs have failed to state any facts which would establish such a claim, specifically the particular statute which they claim requires a duty to protect a particular class of persons from a particular injury or type of injury, as is required under Florida law.  Accordingly, to the extent Count II of the AC attempts to state a cause of action for "Negligence Per Se," this Count should be dismissed for the reasons stated above.

Plaintiffs may attempt to avoid these requirements by arguing that they have an alleged medical monitoring claim.  However, a claim for medical monitoring is not a common law tort, but rather an equitable remedy that a court may fashion under certain limited conditions when there is no common law tort.  *Petito v. A. H. Robbins Co., Inc.*, 750 So. 2d 103 (Fla. 3d DCA 2000); *Jacobs v. Osmose, Inc.*, 2002 WL 34241682 (S.D. Fla. Jan. 3, 2002) (no claim for negligence even when medical monitoring is alleged).  *Id.*  In *Jacobs*, the Court dismissed the claim for medical monitoring when the plaintiff alleged nothing more than the use of flooring products in his deck, and the conclusory presumption that he was exposed to harmful chemicals. Plaintiffs have failed to allege in the AC specific exposure that would raise their claims beyond the level of speculation.  Furthermore, they have failed to allege the other elements of a medical monitoring claim as required to provide Drummond with adequate notice of the claims.  See *Jacobs*.

V.  Count III – Plaintiffs' Fraud Claims Should be Dismissed.

The AC should be dismissed because Plaintiffs have failed to plead fraud with particularity or satisfy the pleading requirements.  Fraud requires detailed allegations of the following:

> An aggrieved party proves common law fraud by establishing that:  (1) the opposing party made a representation of a material fact, (2) the opposing party knew or should have known the falsity of the statement, (3) the opposing party intended to induce the aggrieved party to rely on the false statement and act on it, and (4) the aggrieved party relied on that statement to his or her detriment.  *See, e.g., Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (listing the elements of fraudulent misrepresentation).

*Jackson v. Shakespeare Foundation, Inc*., 108 So. 3d 587, n.2 (Fla. 2013).  Such statements must be made by the defendant to the plaintiff.  Id.  *See Davis v. Chapon*, 2015 WL 10791962 (M.D. Fla. August 11, 2015).  In this case, Plaintiffs did not purchase their houses from Drummond and cannot allege that any statements were made by Drummond to them to induce such purchases. Moreover, even assuming for the sake of argument that any statements were made by Drummond, Plaintiffs have completely failed to allege fraud with particularity as required by Rule 9(b).  This would require the Plaintiffs to allege:

> (1) precisely what documents or oral representations were made, . . . (2) the time and place of each such statement and the person responsible for making (or in the case of omissions, not making) same, . . . (3) the content of such statements and manner in which they misled the Plaintiffs, and (4) shat the Defendant obtained as a consequence of the fraud.

*In re Recoton Corp.*, 358 F. Supp. 2d 1130, 1138 (M.D. Fla. 2005), quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F. 3d 1194, 202 (11th Cir. 2001).  In this case, no such allegations have been made and none can be made in good faith.

VI.   Count IV – Plaintiffs' Negligent Misrepresentation Claims Should be Dismissed.

The AC should be dismissed because Plaintiffs have failed to allege negligent misrepresentation with particularity or satisfy the pleading requirements.     Negligent misrepresentation requires that Plaintiffs plead:

> (1) a misrepresentation of material fact; (2) that Defendant knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) that Defendant intended to induce another to act on the misrepresentation; and (4) that an injury resulted in justifiable reliance upon the misrepresentation.

*Principal Bank v. First American Mortgage, Inc*., 2012 WL 473507 (M.D. Fla. Feb. 14, 2012). Plaintiffs have completely failed to satisfy the requirements of negligent misrepresentation because they have not alleged misrepresentations made to them in order to induce the purchase of their

property.  For the reasons discussed above, they have also failed to comply with Rule 9(b) and cannot in good faith make such allegations.

VII.  Count V – There is No Legal Basis for Private Nuisance.

Plaintiffs claim that the alleged nuisance resulted from the prior mining and reclamation of the land that existed when they purchased their land.  As the court ruled in *Morgan*, "we conclude that Ms. Morgan has not alleged a theory of nuisance, entitling her to money damages, based upon an alleged condition on her own property, which existed at the time she purchased the land." *Morgan v. W.R. Grace & Co.*, 779 So. 2d 503, 507 (Fla. 2d DCA 2000).  Therefore this claim should be dismissed.

VIII.  Count IV – There is No Legal Basis for Strict Liability for Abnormally Dangerous Activity.

Florida law provides that an "abnormally dangerous condition or ultra-hazardous activity" means an activity that is itself inherently dangerous at the time it is being done.  *Morgan*, 779 So. 2d at 505.  The Plaintiff must be harmed at the time of, and as a result of, Defendant's performing the activity.  *Id.*  Controlling Florida law has concluded that there is nothing inherently dangerous about developing phosphate land for residential use.  *Morgan*.  The future radiation risks or potential consequences of construction on such land does not make the reclamation process "abnormally dangerous."  *Id.*  In addition, Plaintiffs fail to allege personal injury or physical property damage that occurred at the time the alleged dangerous activity took place.

IX.  Count VII – Plaintiffs' Claim for Unjust Enrichment Should be Dismissed.

Count VII should be dismissed because Plaintiffs have failed to meet the pleading requirements for unjust enrichment.  Unjust enrichment requires that Plaintiffs allege:

> (1) a benefit conferred upon a defendant by the plaintiff;
> (2) the defendant's appreciation of the benefit;
> (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof.

*Opteum Fin. Servs. LLC v. Kolbe*, 2010 WL 3766470 (M.D. Fla. 2010).  In this case, Plaintiffs did not purchase their properties from Drummond, and cannot allege in good faith that they conferred a benefit on Drummond.  Likewise, Drummond did not receive a benefit from Plaintiffs.  The law is clear that "unjust enrichment requires the benefit be direct to the litigant . . .," not to some third party.  *Allstate Ins. Co. v. Vizcay*, 2014 WL 12619913 (M.D. Fla. 2014).  Count VII should therefore be dismissed.

X.  Chapter 558 Requires Dismissal or a Stay.

Chapter 558 was enacted as an "alternative method to resolve construction disputes that would reduce the need for litigation as well as protect the rights of property owners."  See Fla. Stat. § 558.001.  In "actions brought alleging a construction defect, the claimant shall, at least 60 days before filing any action, ... serve written notice of claim on the contractor, subcontractor, supplier, or design professional, as applicable, which notice shall refer to this chapter."  Fla. Stat. § 558.004.

Chapter 558 applies to any action "asserting a claim for damage to or loss of real ... property caused by an alleged construction defect."  Fla. Stat. § 558.002(1).  A "construction defect" is defined as a "deficiency in ... the alteration ... of real property resulting from:  (a) Defective material ... used in the construction, or (b) a failure to construct ... real property in accordance with accepted trade standards."  Fla. Stat. § 558.002(5).  "Real property" is defined broadly to encompass "land that is improved."  Fla. Stat. § 558.002(8).

In the AC, Plaintiffs seek alleged damages stemming from, among other things, lost value or loss of use of their homes.  AC ¶¶ 30, 97, 98, 129, 141, 147, 169.  To that end, Plaintiffs allege that Drummond conducted inadequate reclamation and reclamation of the former mining lands and used unsuitable fill materials in developing sites for residential construction.  AC ¶¶ 2, 23, 96, 97, 139a.  The AC, however, fails to reference Chapter 558 - let alone allege compliance with its strict

notice requirements.  Indeed, Drummond has been afforded no opportunity to inspect and Jerue and Feist have failed to provide any testing or other information. Under these circumstances, Florida Statutes compel a stay of this action.  See Fla. Stat. § 558.003 ("If a claimant files an action alleging a construction defect without first complying with the requirements of this chapter, on timely motion by a party to the action the court shall stay the action, without prejudice, and the action may not proceed until the claimant has complied with such requirements.") (emphasis added).  Should the Court not dismiss the Complaint, the Court should stay this action until such time that Plaintiffs can demonstrate compliance with Chapter 558. This is particularly appropriate in this case given the lack of any specific allegations of radiation testing, levels, or harm to Jerue or Feist.[4]

For the reasons stated, the AC should be dismissed or stayed.

### Rule 3.01(g) Certification

The undersigned certifies that they have conferred with counsel for Plaintiffs in a good-faith effort to resolve the issues raised by the alternative motion to stay, but the parties have been unable to agree.

<div style="margin-left:40%">

Respectfully submitted,

HOLLAND & KNIGHT LLP

*/s/Charles Wachter*
Joseph H. Varner, III
Florida Bar No. 394904
Frederick J. Grady
Florida Bar No. 437980
Charles Wachter

</div>

---

[4] The Chapter 558 proceeding will give Drummond the opportunity not only to inspect and test the subject property to determine whether Plaintiffs' claims have any validity, but also an opportunity to resolve the issues alleged in Plaintiffs' AC through the detailed procedures as are set forth in Section 558.004, Florida Statutes.  The practical effect of staying the current case, is to give Drummond an opportunity to evaluate Plaintiffs' claims – other than on paper – and perhaps resolve the claims prior to engaging in further litigation activity.

Florida Bar No. 509418
100 N. Tampa St., Suite 4100
Tampa, Florida  33602
Telephone: (813) 227-8500
Facsimile:  (813) 229-0134

*Trial Counsel for Drummond Company, Inc.*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 15, 2017, I electronically filed the foregoing with the Clerk of the Court by using the Court's CM/ECF system, which will transmit the foregoing document via email to all counsel of record.

*/s/Charles Wachter*
Attorney

24