**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

JOHN J. JERUE and MICHAEL J. FEIST,

    Plaintiffs,

v.                                                        Case No. 8:17-CV-00587-EAK-AEP

DRUMMOND COMPANY, INC.,

    Defendant.

---

**PLAINTIFFS' MOTION TO COMPEL INSPECTION OF LAND**

On February 14, 2019, Plaintiffs served their First Request for Inspection of Property on Drummond, seeking to allow Plaintiffs' expert(s) to enter and conduct non-invasive radiation testing upon certain properties that Drummond owns. *See* Exhibit 1. This request is similar to a request previously made by Defendant with the critical difference being that the inspection and testing was to be done by Plaintiffs' retained experts and not a state agency.

On March 1, 2019, Defendants served their Objection to Plaintiffs' Request for Inspection, arguing that the radiation levels on its land are not relevant or discoverable under Rule 26. *See* Exhibit 2. Because the discovery sought by Plaintiffs is relevant and discoverable under Rule 26, Drummond's objection is without merit and should be overruled. Plaintiffs now move to compel entry and inspection of Drummond's land to conduct noninvasive radiation testing using handheld radiation detectors.

    **I.    Legal Standard**

Under Federal Rule of Civil Procedure 34, "[a] party may serve on any other party a request within the scope of Rule 26(b) . . . to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect,

measure, survey, photograph, test, or sample the property or any designated object or operation on it." FED. R. CIV. P. 34(a)(2); *Powers v. Hartford Ins. Co.*, No. 8:10-CV-1279-T-AEP, 2010 WL 11508159, at *1 (M.D. Fla. Nov. 2, 2010).

"As contemplated by Rule 34, the scope of permissible inspections is governed by Rule 26(b) of the Federal Rules of Civil Procedure." *Powers*, 2010 WL 11508159, at *1. "Pursuant to Rule 26(b)(1), '[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.'" *Id.* (quoting FED. R. CIV. P. 26(b)(1)). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Am. Home Assurance Co. v. Arrow Terminals, Inc.*, No. 8:11-CV-01278-T30-AEP, 2013 WL 12157428, at *2 (M.D. Fla. Jan. 17, 2013) (quoting FED. R. CIV. P. 26(b)(1)).

Evidence is relevant if it has any tendency to prove or disprove a fact of consequence. FED. R. EVID. 401, 402; *United States v. Patrick*, 513 F. App'x 882, 886 (11th Cir. 2013). "[R]elevancy under Rule 26(b)(1) has been construed broadly." *Am. Home Assurance Co.*, 2013 WL 12157428, at *2; *see also Stern v. O'Quinn*, 253 F.R.D. 663, 670 (S.D. Fla. 2008) (observing that "courts have long recognized the wide scope of discovery allowed under the Federal Rules of Civil Procedure" and that the "United States Supreme Court has said that [the discovery provisions of the Federal Rules of Civil Procedure] are to be broadly and liberally construed").

**II.     Because the radiation levels in the entire Class Area are relevant to the claims and defenses in this case, the Court should compel the inspection of Drummond's land.**

Plaintiffs' Second Amended Class Action Complaint ("SAC") alleges that Drummond's and its successors' phosphate mining operations have caused elevated levels of gamma radiation to occur throughout the Class Area, comprised of land in which the former Poseidon Mine was located. *See* SAC, Doc. No. 36 ¶¶ 1-2, 8-9, 12-20, 22-26, 42-44, 48-52, 63-72, 75-81. The SAC

2

currently[1] defines the "Class Area" as "*any* real property in the Oakbridge and Grasslands Communities." *Id*. ¶ 111 (emphasis added). For obvious reasons, Drummond and its agents are excluded as members of the putative classes. *Id*. ¶ 113. Thus, while Drummond is not a putative class member, the real property that Drummond owns in Oakbridge and Grasslands is within the Class Area, as defined in Plaintiffs' SAC, and as part of the former Poseidon Mine, its radiation levels are factually relevant to the claims made in this case.

Given that the central premise of Plaintiffs' claims is that the Class Area contains elevated levels of gamma radiation, any and all reliable data points reflecting the radiation levels of the real property within the Class Area clearly have the tendency to prove or disprove whether the radiation levels in the Class Area are, in fact, elevated. Because Drummond owns real property within the Class Area, the radiation levels of Drummonds' properties are relevant to Plaintiffs' claims, so Drummond's argument that the *only* relevant data points are the radiation levels of the land owned by the putative class members is without merit.

Drummond's primary defense in this case is that the mining and reclamation done within the Class Area has not resulted in elevated radiation levels. *See* Def.'s Motion to Compel Access for Testing by the FDOH ("Def.'s Motion to Compel"), Doc. No. 63, at 2-3; Transcript of Hearing on Motion to Compel, Oct. 22, 2018, attached as Ex. 3, at 8-9 & 13. And Drummond has taken the identical position that Plaintiffs advance here – that all data points within the Class Area are relevant, and not just the data points for land owned by the putative class members – to this Court in asserting this defense.

Specifically, Drummond has alleged that "current FDOH testing in Oakbridge/Grasslands shows no unsafe gamma levels," citing to, *inter alia*, "40,000 radiation readings throughout

---

[1] To the extent revealed by discovery and investigation, there may be additional or broader descriptions regarding the Class Area or class definitions. SAC, Doc. No. 36 ¶ 112.

3

Oakbridge/Grasslands." *See* Def.'s Motion to Compel, Doc. No. 63, at 3; *see also* Hearing Transcript, Ex. 3, at 8-9; Hearing Exhibits, Doc. No. 69-1, at 1-2 (maps indicating the location of FDOH's 40,000 data points of radiation readings). But it is indisputable that not a single data point from the 40,000 radiation readings was taken on Plaintiffs' or the putative class members' properties; rather, as Drummond knows, these data points were taken on streets, parking lots, and vacant lots owned by Drummond, in and around Oakbridge and Grasslands. *See* Dunn Dep., Doc. No. 67-1, at 54:25-57:13; Williamson Dep., Doc. No. 67-2, at 28:25-29:10, 62:15-63:8 & 63:18-24, 30:2-4, 31:10-21, 63:25-66:21, 122:24-124:10, 124:19-129:19, 131:25-132:6; Hearing Exhibits, Doc. No. 69-1, at 1-2 (maps indicating the location of FDOH's 40,000 data points of radiation readings). Nevertheless, in its Motion to Compel, Drummond argued that "Defendant is entitled to conduct discovery related to *any alleged radiation*." *See* Def.'s Motion to Compel, Doc. No. 63, at 3 (emphasis added). Plaintiffs agree that any alleged radiation in the Class Area is discoverable. But Plaintiffs should also be entitled to conduct discovery on the same terms. Thus, Drummond cannot now credibly claim that the only relevant data points are the radiation readings taken on Plaintiffs' and the putative class members' properties after previously arguing to this Court that the 40,000 data points, some of which were taken on Drummond's land, were relevant to establishing that the radiation levels in the Class Area are not elevated.

In addition to advocating for the relevancy of the 40,000 data points, Drummond has also made other factual assertions that make the radiation levels on Drummond's land relevant:

> (i) "However, the reclamation and development process reduced the previously low levels to even lower levels. This is critical, because it is only the <u>current</u> level of gamma radiation that is relevant to Plaintiffs' individual claims. <u>Current</u> gamma levels require individual testing." *See* Def.'s Motion to Compel, Doc. No. 63, at 2 (emphasis in original); and

> (ii) "Since that time [prior to the development of the Class Area], there has been all of this development activity, including concrete slabs for each and every house, which

4

has resulted in even lower levels and no threat to human – human health and no threat to public health." Hearing Transcript, Ex. 3, at 13.

Given that Drummond is affirmatively alleging that its reclamation and development processes *lowered* the radiation levels in the Class Area, the actual radiation levels throughout the Class Area – including on Drummond's land – would have the tendency to prove or disprove whether Drummond's reclamation and development processes prevented the radiation levels in the Class Area from being elevated. Given that these defenses are easily proven or disproven through empirical, objective evidence in the form of radiation testing, Plaintiffs should have equal access to test Drummond's factual allegations. Thus, the radiation levels on Drummond's land contained in the Class Area is relevant and discoverable, just as Drummond previously argued in its Motion to Compel. *See* Def.'s Motion to Compel, Doc. No. 63, at 3 ("Defendant is entitled to conduct discovery related to *any alleged radiation*.") (emphasis added).

And Drummond will not be prejudiced by this non-invasive testing, which is the same testing that Drummond can conduct on Plaintiffs' properties and the same (albeit with a different type of meter) that FDOH previously conducted on various class members' properties. That this lawsuit, which Drummond has attempted to dismiss twice and failed, is publicly available is both a function of the well-established public right of access to judicial proceedings and records under the Constitution and, in any event, a problem of Drummond's own making.

And, once again, Drummond holds itself to a different discovery standard than it seeks to hold Plaintiffs. Drummond has publicly filed the test results from FDOH's testing on two separate occasions. *See* Preliminary Expert Report of Dr. Christopher Teaf, Doc. No. 24-1, at 16-33; Ex. B to Def.'s Motion to Compel, Doc. No. 63-2, at 1-100. Thus, Drummond's claim of prejudice regarding the same type of data that is has previously disclosed rings hollow and self-serving.

### III. Conclusion and Prayer for Relief

Because the radiation levels in the entire Class Area and the impacts of mining and reclamation in the Poseidon Mine on those levels are relevant to the claims and defenses in this case, the Court should grant this motion to compel the inspection of Drummond's land and grant Plaintiffs all other relief to which they are justly entitled.

Dated:  March 19, 2019        By:        /s/ *Christopher L. Gadoury*
                                Neal O'Toole, Esq.
                                310 East Main Street
                                Bartow, FL  33830
                                Telephone: (863) 533-5525
                                Neal.Otoole@OToolePa.com

W. Mark Lanier, Esq.
(admitted *pro hac vice*)
Richard Meadow, Esq.
(admitted *pro hac vice*)
Chris Gadoury, Esq.
(admitted *pro hac vice*)
**The Lanier Law Firm, P.C.**
6810 FM 1960 West
Houston, Texas 77069
Telephone: (713) 659-5200
wml@lanierlawfirm.com
Richard.Meadow@lanierlawfirm.com
Chris.Gadoury@lanierlawfirm.com

Christopher T. Nidel, Esq.
(admitted *pro hac vice*)
Jonathan Nace, Esq.
(admitted *pro hac vice*)
**Nidel & Nace, P.L.L.C.**
5335 Wisconsin Ave., NW, Suite 440
Washington, D.C. 20015
Telephone:  (202) 558-2030
chris@nidellaw.com

        Steven J. German, Esq.
(admitted *pro hac vice*)
Joel M. Rubenstein, Esq.
(admitted *pro hac vice*)
**German Rubenstein LLP**
19 West 44th Street, Suite 1500
New York, NY 10036
Telephone: (212) 704-2020
sgerman@germanrubenstein.com
jrubenstein@germanrubenstein.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2018, a true and correct copy of the foregoing was served electronically on all parties registered to receive electronic notice via the Court's CM/ECF system.

        */s/  Christopher L. Gadoury*
        Christopher L. Gadoury