# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

MICHAEL J. FEIST,
On behalf of himself and all others similarly situated,

      Plaintiffs,

THE DRUMMOND COMPANY, INC.,

      Defendant.

Civ. No. 8:17-CV-00587-TPB-AEP

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
## AND LEGAL MEMORANDUM IN SUPPORT THEREOF

## <u>TABLE OF CONTENTS</u>

PLAINTIFF'S STATEMENT OF RELIEF REQUESTED ............................................ 1

INTRODUCTION AND SUMMARY OF LEGAL ARGUMENT ............................. 1

RELEVANT BACKGROUND AND EXPERT OPINIONS ....................................... 2

   I.    RADIOACTIVE POLLUTION IS PRESENT THROUGHOUT THE PCA ..... 4

   II.   PCA-WIDE POLLUTION POSES CANCER RISK AND REQUIRES
       REMEDIATION ................................................................................................. 7

STANDARD OF REVIEW ............................................................................................. 9

ARGUMENT ................................................................................................................. 9

   I.    THE PROPOSED PROPERTY DAMAGE CLASS SATISFIES ALL
       REQUIREMENTS OF FED. R. CIV. P. 23 .................................................... 9

     A.   Plaintiff Has Proposed an Objective, Reasonable Class Definition that
         Allows the Court to Easily Ascertain Membership ............................................. 9

     B.   The Class is Sufficiently Numerous that Joinder is Impracticable .......... 10

     C.   There are Questions of Law and Fact Common to the Class .................... 11

     D.   Plaintiff's Claims are Typical of the Class Members .................................. 13

     E.   Mr. Feist Will Fairly and Adequately Protect the Interests of the Class . 14

     F.   Common Questions of Law and Fact Predominate ................................... 15

       (i)   The Claims Arise from a Common Nucleus of Facts Surrounding
          Drummond's Conduct ...................................................................................... 15

       (ii)  The Economic Damage Can be Proven Class-Wide .............................. 19

     G.   A Class Action is Superior to Any Alternative Form of Adjudication .... 20

II.   INJUNCTIVE RELIEF IN THE FORM OF REMEDIATION OF PCA
PROPERTIES SHOULD BE CERTIFIED UNDER RULE 23(B)(2).........................22

III.  INJUNCTIVE RELIEF IN THE FORM OF MEDICAL MONITORING
SHOULD BE CERTIFIED UNDER RULE 23(B)(2) ...................................................22

IV.  IN THE ALTERNATIVE, AN ISSUES CLASS SHOULD BE CERTIFIED
UNDER RULE 23(C)(4)...........................................................................................24

CONCLUSION .............................................................................................................25

## TABLE OF AUTHORITIES

## CASES

*Amchem Prod. v. Windsor*, 521 U.S. 591 (1997) ............................................................. 21

*Andrews v. Plains All Am. Pipeline, L.P*, No. CV154113PSGJEMX,
  2019 WL 6647928 (C.D. Cal. Nov. 22, 2019) ...................................................... 10

*Aramark Uniform and Career Apparel, Inc. v. Easton*, 894 So. 2d 20 (Fla. 2004) ......... 17

*Barry B. Roseman, D.M.D., M.D., Profit Sharing Plan v. Sports &
  Recreation*, 165 F.R.D. 108 (M.D. Fla. 1996) ...................................................... 14

*Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471 (S.D. Ohio 2004) ..................... 9, 14, 22

*Bhatt v. Tech Data Corp.*, No. 8:17-CV-2185-T-36AEP, 2017 WL
  10295956 (M.D. Fla. Dec. 28, 2017) .................................................................... 13

*Boggs v. Divested Atomic Corp.*, 141 F.R.D. 58 (S.D. Ohio 1991) ..................... 9, 12, 14

*Bowe v. Public Storage*, 318 F.R.D. 160 (S.D. Fla 2015) ............................................... 11

*Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1239 (11th Cir. 2016)............ 19

*Claborne v. Hous. Auth. of New Orleans*, 165 So.3d 268 (La. Ct. App. 2015) ............. 21

*Colomar v. Mercy Hosp., Inc.*, 242 F.R.D. 671 (S.D.Fla. 2007) .................................... 10

*Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378 (D.Colo.1993) ............................. 12, 21, 22

*Cotromano v. United Techs. Corp.* (No. 10-80840-CIV, 2018 WL 2047468, at *11-12
  (S.D. Fla. May 2, 2018) ......................................................................................... 17

*Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546 (11th Cir. 1986) ..................................... 9

*Day v. NLO*, 851 F. Supp. 869 (S.D. Ohio 1994) ........................................................... 24

*Fosbrink v. Area Wide Protective, Inc.*, 325 F.R.D. 474 (M.D. Fla. 2018) ................... 20

*Freeman v. Grain Processing Corp.*, 895 N.W.2d 105 (Iowa 2017) ......................... 2, 12

*Gates v. Rohm & Haas Co.*, 655 F.3d 255 (3d Cir. 2011) .............................................. 12

*Gunnels v. Healthplan Services, Inc.*, 348 F.3d 417 (4th Cir. 2003) .............................. 21

*Halley v. Honeywell Int'l, Inc.*, Civ. No. 10-3345 (Salas, J.), 2016
WL 1682943, at *2 (D.N.J. Apr. 26, 2016), *aff'd in part, vacated in part,
remanded,* 861 F.3d 481 (3d Cir. 2017)................................................................ 15

*Herman v. Seaworld Parks & Ent., Inc.*, 320 F.R.D. 271, 291 (M.D. Fla. 2017)............9

*In re Carbon Dioxide Antitrust Litig.*, 149 F.R.D. 229 (M.D.Fla. 1993) ...................... 11

*In re Checking Acct. Overdraft Litig.*, 307 F.R.D. 630 (S.D. Fla. 2015)........................ 13

*In re Chiquita Brands Int'l Inc. Alien Tort Statute & S'holders
Derivative Litig.*, 331 F.R.D. 675 (S.D. Fla. 2019)............................................... 25

*In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014)................................................ 19

*In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, No.
04 CV 2389 SAS, 2007 WL 1601491 (S.D.N.Y. June 4, 2007) ............... 9, 12, 16

*In re Oil Spill by the Amoco Cadiz*, 954 F.2d 1279 (7th Cir.1992) ............................... 19

*In re Terazosin Hydrochloride*, 220 F.R.D. 672 (S.D.Fla. 2004)....................................11

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 399 F.3d 248 (3d Cir. 2005) ................. 8

*Jerue v. Drummond Co., Inc.*, No. 8:17-CV-587-EAK-AEP, 2018
WL 7461683 (M.D. Fla. Apr. 19, 2018) ....................................................... 18, 23

*Kluge v. Crews Lake Road & Bridge Dist.*, No. 82-933-CIV-T-15, 1985
U.S. Dist. LEXIS 22530 (M.D. Fla. Feb. 15, 1985)............................................ 18

*LeClercq v. Lockformer Co.*, Civ. No. 00-7164, 2001 WL 199840
(N.D. Ill. Feb. 28, 2001).................................................................................. 19, 21

*Ludwig v. Pilkington North America, Inc.*, 2003 WL 22478842 (N.D.Ill.2003) .......... 21

*Martin v. Behr Dayton Thermal Prod. LLC,* 896 F.3d 405 (6th Cir. 2018)
*cert. denied* 139 S.Ct. 1319 ........................................................................1, 24, 25

*McHugh v. Madison-Kipp Corp., et al.*, Civ. No. 11-724 (W.D. Wisc.
April 16, 2012)........................................................................................................ 14

*Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910 (7th Cir. 2003)........................ 11, 19, 21

*Mohamed v. Am. Motor Co., LLC,* 320 F.R.D. 301 (S.D. Fla. 2017).............................. 13

iv

*Murray v. Auslander,* 244 F.3d 807 (11th Cir. 2001) ................................................... 22

*Navelski v. Int'l Paper Co.,* 244 F. Supp. 3d 1275 (N.D. Fla. 2017) ..................... *passim*

*Neale v. Volvo Cars of N. Am., LLC,* 794 F.3d 353, 374–75 (3d Cir. 2015) ................. 19

*Northrup v. Innovative Health Ins. Partners,* LLC, 329 F.R.D. 443
(M.D. Fla. 2019) ........................................................................................................... 11

*O'Connor v. Boeing N. Am., Inc.,* 184 F.R.D. 311 (C.D. Cal. 1998) ...................... 22, 24

*Olden v. LaFarge Corp.,* 203 F.R.D. 254 (E.D. Mich. 2001) .......................................... 22

*Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322 (1979) ............................................. 21

*Petito v. A.H. Robins Co.,* 750 So. 2d 103 (Fla. Dist. Ct. App. 1999) ......................... 23

*Pickett v. IBP, Inc.,* No. CIV. 96-A-1103-N, 2001 WL 34886460
(M.D. Ala. Dec. 26, 2001) ....................................................................................... 19

*Prado v. Bush,* 221 F.3d 1266 (11th Cir. 2000) ............................................................. 13

*Principal Bank v. First Am. Mortg.,* Inc., 2012 WL 473507 (M.D. Fla.
Feb. 14, 2012) .......................................................................................................... 19

*Rementer v. United States,* No. 8:14-CV-642-T-17MAP, 2015 WL
5934522 (M.D. Fla. Oct. 9, 2015) ........................................................................... 17

*Stepp v. Monsanto Research Corp.,* Civ. No. 3:91-468, 2012 WL
604328 (S.D. Ohio Feb. 24, 2012) ...................................................................... 9, 14

*Sterling v. Velsicol Chemical Corp.,* 855 F.2d 1188, at 1212 (6th Cir. 1988)............ 19

*Tyson Foods, Inc. v. Bouaphakeo,* 136 S. Ct. 1036 (2016) ........................................ 6, 16

*Walco Invs., Inc. v. Thenen,* 168 F.R.D. 315, 325 (S.D.Fla. 1996)........................ 11

*Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011) ..................................................... 11

*Wehner v. Syntex Corp.,* 117 F.R.D. 641, 645 (N.D. Cal. 1987)............................ 21

*Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532 (6th Cir. 2012).................................. 9

## **STATUTES**

Fla. Stat. § 376 .......................................................................................................... 14, 25

Fla. Stat. § 376.031(17) .................................................................................................. 18

Fla. Stat. § 376.313(3) .................................................................................................... 17

## **RULES**

Federal Rule Civil Procedure 23(a) ................................................................................. 9

Federal Rule Civil Procedure 23(a)(1) ........................................................................... 10

Federal Rule Civil Procedure 23(a)(2) ...........................................................................11

Federal Rule Civil Procedure 23(a)(3) ........................................................................... 13

Federal Rule Civil Procedure 23(a)(4) ........................................................................... 14

Federal Rule Civil Procedure 23(b)(2) ....................................................................... 1, 22

Federal Rule Civil Procedure 23(b)(3) ...........................................1, 15, 16, 20, 21, 24

Federal Rule Civil Procedure 23(c)(4) ........................................................... 1, 24, 25

## **OTHER AUTHORITIES**

*Manual for Complex Litigation, Fourth,* § 21.24 ......................................................... 24

*McLaughlin on Class Actions* § 4:19 (12th ed. 2015) .................................................. 19

*Moore's Federal Practice* § 23.21[3] ............................................................................. 9

*Moore's Federal Practice* § 23.02 ............................................................................... 21

*Newberg on Class Actions* § 17:51 (4th ed.) ............................................................... 21

*Newberg on Class Actions* § 4:54 (5th ed)……………………………………………  19

vi

**<u>PLAINTIFF'S STATEMENT OF RELIEF REQUESTED</u>**

Plaintiff Michael J. Feist, on behalf of himself and all others similarly situated, respectfully moves to certify the following classes: liability and damages pursuant to Fed. R. Civ. P. Rule 23(b)(3), injunctive relief for remediation pursuant to Fed. R. Civ. P. 23(b)(2); injunctive relief for medical monitoring pursuant to Fed. R. Civ. P. 23(b)(2); and, in the alternative, an issues class pursuant to Fed. R. Civ. P. 23(c)(4).

**<u>INTRODUCTION AND SUMMARY OF LEGAL ARGUMENT</u>**

Class certification is appropriate when Defendant's common course of conduct toward all homeowners within a confined, geographic boundary results in dangerous pollution. *See Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275 (N.D. Fla. 2017) (certifying environmental property class arising from a dam collapse and flooding). Here, the Proposed Class Area ("PCA") consists of ~1000 residential properties which Defendant, The Drummond Company, Inc. ("Drummond"), built within the radioactive footprint of its former 1,450-acre phosphate mine. Ex. 1 at 76:22-81:4; 84:7-21; *see, also* Ex. 2-3. Drummond mined the land, processing and extracting the useful phosphate materials, and discharging its highly radioactive wastes ("Pollution") back into the stripped mine. By Drummond's own admission "***the vast majority of the [PCA] has been drastically affected by the phosphate mining process.***" Ex. 1 at 217:9-223:20. This Pollution significantly and consistently exceeds background radiation levels, as well as U.S. Environmental Protection Agency ("EPA"), Nuclear Regulatory Commission ("NRC") and other health-based cleanup standards, and, according to Plaintiff's scientific and

1

medical experts, resulted in dangerous levels of Pollution across the entire PCA requiring remediation.

In addition to Drummond's tortious mining activity being common toward all Plaintiffs, the "class wide" Pollution permeates the entire PCA above health-based regulatory standards. Because Drummond's residential development occurred within the footprint of its radioactive mine, there are no complex transport or causation questions unique to each property. *See Freeman v. Grain Processing Corp.*, 895 N.W.2d 105, 120–29 (Iowa 2017) (certifying property damage class arising from "pollution blanketing [] neighborhood;" and distinguishing cases involving "more complex" exposure pathways). Here, the PCA is confined to the footprint of Drummond's mine and its endemic radioactive Pollution. Common issues surrounding Drummond's conduct and the PCA-wide Pollution predominate this case and will drive its resolution. A class action is the superior method of adjudication. Requiring 1,000 separate actions regarding the same issues would be inefficient and uneconomical.

## RELEVANT BACKGROUND AND EXPERT OPINIONS

Plaintiff Michael J. Feist, putative class representative for all classes, owns property within the PCA, at 651 Grasslands Village Cir., Lakeland, Florida. Ex. 4. Mr. Feist previously owned two other properties in the PCA and lived in the PCA for over 10 years. *Id*. Drummond never disclosed that his properties had been mined for phosphate and reclaimed.  Ex. 5 at 67:2-19. He is concerned about his family's health from elevated radiation in his community. *Id.* at 79:8-17; 80:16-19; 87:22-88:15; 91:19-2.

2

Drummond mined the land, processing and extracting the useful phosphate materials, and discharging its Pollution back into the stripped mine. Ex. 6. Plaintiff's experts analyzed voluminous environmental data and opined that Drummond's mining activities resulted in dangerous levels of Pollution across the entire PCA, requiring remediation. These experts include:

1. David Lyerla – an environmental engineer and Radiation Safety Officer who conducted gamma walkover radiation surveys throughout the PCA and in unmined (background) areas to measure Pollution. *See* Exs. 7, 36.

2. Kai Vetter, Ph.D. – a nuclear engineering professor who determined that the Florida Department of Health's ("FDOH") survey instrument, the RadEye PRD, significantly underreports radioactivity. *See* Exs. 8 & 9.

3. Anita Singh, Ph.D. – an environmental statistician, who has provided statistical support for over 250 federal cleanup sites, derived estimates of background radiation levels and statistically demonstrated that mined land exhibits significantly higher gamma radiation and soil radium-226 ("$Ra^{226}$") than undisturbed lands. *See* Ex. 10. She confirmed that existing residential radiation surveys provide a statistically robust dataset for demonstrating class-wide elevated radiation. *See* Ex. 11.

4. Stewart Bland - a Certified Health Physicist (CHP) reviewed the Lyerla data, the Vetter and Singh analyses, historical surveys, sampling data, and other evidence concluding that the PCA is impacted by elevated levels of radiation due to Drummond's mining and discharge of radioactive wastes, and that the PCA presents exposure risks that require class-wide remediation. *See* Exs. 6 & 12.

5. Robert Ullrich, Ph.D. – a member of the National Academies of Sciences' most recent panel on radiation health risks, professor of radiation sciences, and expert in radiation carcinogenesis opines that radiation-induced cancer follows a non-threshold model and that every dose of radiation above background increases the risk of cancer. *See* Exs. 13 & 14

6. Dean Felsher, MD – a Stanford University professor and medical oncologist reviewed the reports of Dr. Ullrich and Mr. Bland and opined that Drummond's Pollution places members of the proposed class at a significantly increased risk of cancers, necessitating medical monitoring for the early detection of these latent illnesses. *See* Exs. 15 & 16.

7. Jeffrey Zabel, Ph.D. – an economics professor at Tufts and expert on the impact of pollution on real estate economics, opines that hedonic regression analysis can measure on a class-wide basis the impacts of the Pollution on PCA property values. *See* Exs. 17 & 18.

## I.   RADIOACTIVE POLLUTION IS PRESENT THROUGHOUT THE PCA

Multiple lines of evidence demonstrate that Pollution permeates the PCA at levels that exceed federal risk-based cleanup standards and that Plaintiff's experts deem a danger and threat to human health. Drummond admitted there is elevated radiation across the entire PCA. Ex. 19 at 260, 263. In its Application for Development Approval for the PCA, Drummond adopted as background—the radiation level, or concentration, found in regional unmined soils—typical radioactivity ranging from 4-6 microrem/h, and Ra$^{226}$ soil concentrations of ~0.5 pCi/g. *Id.* Drummond conceded that radioactivity on "reclaimed" mines, such as the PCA, is "typically" 15-30 microrem/hr, well-above background. *Id.* at 263. Drummond's surveys of radiation levels across the PCA, including its "Radiation Map," submitted as part of the development of the PCA, confirm class-wide Pollution significantly above background, with no contours below 10 microrem/hr. *Id.* at 34.[1]

---

[1]These findings are consistent with two prior class-wide surveys by the Polk County Health Department ("PCHD") in response to requests from Drummond, which found radiation above background, averaging ~18 uR/hr across the PCA. *See* Exs. 20, 21. The PCHD warned that the PCA had "a higher average [radiation] measurement than normal background (2 to 3 times higher)." Ex. 21; *see also* Ex. 6, pp. 18-20.

Mr. Bland opines that Pollution above health and safety standards is present across the entire PCA. Using agency methodology,[2] he first established background levels—expressed as a dose rate (5-7 microrem/hr), count rate (5,100cpm), or soil $Ra^{226}$ concentration (0.5-1.0 pCi/g)—to identify soil contamination (*i.e.* Pollution levels above "background"). Ex. 6 at 13, n.12; Ex. 7 at p. 8; Ex. 19 at p. 260. He then compared a robust dataset of measurements taken in the PCA—three class-wide historical surveys (n.1 *supra*, Ex 19 at p.34), over 120,000 readings taken by Mr. Lyerla within the PCA including comprehensive surveys of over 30 residences, third-party surveys of portions of the former mine, and corrected[3] data from recent FDOH surveys of over 70 residences within the PCA— to background. Ex. 6 at pp. 16-38; Ex. 36. The Lyerla data reveal that over 93% of the residential radiation readings exceed twice-background, and over 60% exceed

---

[2] Mr. Bland's assessment of the PCA was consistent with federal agency methods for determining the impacted "area of concern." *See* Ex. 6; *see also,* Ex. 11 at p. 7; Ex. 22 at 61:24-63:20 (Drummond expert agrees with methods for determining impacted area). His methodology was based on a robust dataset that inherently ***does not*** require property-by-property testing. Ex. 22 at 61:24-63:20; *see also,* Ex. 11 at 5, 8 ("it is highly likely that the gamma readings of all neighboring properties built on reclaimed mine area will be comparable").

[3] Experts on both sides agree that the device used by the FDOH "significantly underreports" gamma radiation requiring correction of both terrestrial and cosmic components of the total gamma radiation reading. Ex. 8 at p.1; Ex. 9 at p. 2; Ex. 25 at 195:4-13; 250:23-251:24; Ex. 26 at 186:19-25. According to Dr. Vetter's analysis, these readings must be corrected by multiplying by 2.1 and then adding 3.0 microrem/h (the cosmic component not detected by the device). Ex. 9 at Fig. 1. Correcting these readings, by any method, shows elevated radioactivity contamination across the entire PCA.

three-times background. Ex. 6 at p. 38.[4] Including the recent FDOH surveys,[5] over 100 individual properties comprehensively surveyed within the PCA consistently show contamination. Ex. 6 at 32-34. Mr. Bland concluded "there is *widespread contamination across the Class Area*" and based on radiation health authorities' limits, "remediation should be undertaken across the class area." Ex. 6 at pp. 3-4.

Using EPA methods, Dr. Singh performed multiple statistical analyses of the Lyerla data. First, she calculated the Background Threshold Value ("BTV")— the statistical upper-end of background—finding over 98% of the radiation readings exceeded this upper-bound. Ex. 11 at § 2-3. She performed a statistical "acceptance test" on the Lyerla data. *Id.* at 10-11. Her analyses, including near-unanimous radioactivity that exceeds the BTV, concluded that the Lyerla data sufficiently demonstrate that Pollution contaminates the entire PCA. *Id.* at §2-3; p. 10-11. Dr. Singh also performed statistical analysis of thousands of gamma radiation and soil $Ra^{226}$ readings taken by the Florida Office of Radiation Control on local pre- and post-mined soils (another line of evidence considered by Mr. Bland), showing soil $Ra^{226}$ concentrations increase seven-fold and gamma radiation levels more than doubles due to mining. Ex. 10.[6]

---

[4] Drummond's experts found over 90% of the radioactivity readings exceed 10,785 cpm, (background of 5,100cpm) and that every property surveyed had elevated radiation readings. Ex. 23 at Fig. 2 & 3; Ex. 24 at 126:01-132:19.
[5] Drummond relied on the uncorrected data to argue to the Court that this data alone was sufficiently robust to establish the **_lack of contamination_** on a *class-wide* basis. D.E. 24-1, p.8. With the addition of over 100,000 relevant radiation readings, and in the context of voluminous other relevant radiation data, class-wide Pollution significantly above background levels is clearly established.
[6] Representative or statistical evidence may be used to establish class-wide liability. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1044-45 (2016).

## II.   PCA-WIDE POLLUTION POSES CANCER RISK AND REQUIRES REMEDIATION

Radiation carcinogenesis follows a "non-threshold" model, where "any increase in exposure increases the risk of cancer." *See* Ex. 13 at p. 1; Ex. 14 at p. 1. The principle of radiation protection, therefore, is to limit exposure to As Low as Reasonably Achievable ("ALARA"), with the goal of avoiding *any* unnecessary exposure. Ex. 13 at p.1. Cumulative low-dose exposures to radiation of more than 100 millirem (1 millirem = 1,000 microrem) above background increase cancer risk. *Id.* Because of this, the Nuclear Regulatory Commission ("NRC") limits radiation doses on land for unrestricted use by the public to 25 millirem *per year* above background.[7] The EPA recently found that this limit was not protective of health and safety and set an annual limit to the public of 12 millirem. Converting annual limits to an hourly rate, the presence of the near-uniform exposures above 12 millirem per year due to soil radiation in the PCA demonstrates the need for remediation throughout the PCA. Ex. 16 at 4; Ex. 27 at pp. 2-3, 5 ("cleanups at these sites will typically have to be more stringent than required by the NRC dose limits"); Ex. 28 at p. 2 (lowering limit to 12 millirem/hr); *see also* Ex. 29. Expressed in terms of soil Ra$^{226}$ concentrations, the risk of cancer becomes unacceptably increased when soil concentrations exceed 1.24 pCi/g above background. *See, e.g.*

---

[7] The NRC, 10 C.F.R. § 20.1402 "Radiological Criteria for Unrestricted Use" provides that a site will only be considered acceptable for unrestricted use if exposures to an average member are below 25 mrem per year above background. This equates to roughly 2.9 uRrem/hr above background, a level consistently exceeded across the PCA. Ex. 6, p. 3.

Ex. 29. Dr. Felsher opines that significant risks exist at these levels noting epidemiological studies of CT scans confirm this risk. Ex. 16 at 4.

Pollution levels across the entire PCA exceed **_both_** the EPA's and the NRC's annual limits for unrestricted use.[8] *Supra pp*. 4-5; *see also,* Ex. 11 at § 2-3 (98% of the readings were above this limit); Ex. 7; (all properties contain exceedances of this limit); Ex. 19 at p. 263 (post-mined rates are in the range of 15-30 uR/h). In addition, available data on soil $Ra^{226}$ concentrations throughout the PCA indicate average soil $Ra^{226}$ concentrations also exceed significant risk limits requiring remedial action. Ex. 29; Ex. 12 at pp. 28-29 (average $Ra^{226}$ concentration of 7 pCi/g versus limit of 2-3 based on risk and local background).[9] Reviewing the data, Mr. Bland concluded that these exceedances of agency and radiation health authority standards consistently and comprehensively across the entire PCA demonstrate contamination of the land at levels endangering human health. Ex. 12 at p. 5. His exposure modeling confirms that radiation doses exceed both the NRC and EPA risk limits and support his conclusion "that remediation is required across the Class Area to allow for unrestricted use." Ex. 12 at p. 29. The exceedance of either standard constitutes an injury to property. *See Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 399 F.3d 248, 263 (3d Cir. 2005) (the presence of contaminants above cleanup standards presents an imminent and substantial endangerment to health

---

[8] In addition to the exposure and soil readings, Mr. Bland's modeling shows the average exposures due to radiation levels above the background in the PCA are between 250 and 270 millirem per year, well in excess of NRC (25 millirem/yr), EPA (12 millirem/yr) and even the Florida State limit (100 millirem/yr).

[9] Ex. 22 at 351:22-361:10 (acknowledging these standards for remediation); *see also,* Ex. 30 (soil $Ra^{226}$ cleanup concentration 1.5 pCi/g above background).

and the environment); *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, No. 04 CV 2389 SAS, 2007 WL 1601491, at *7 (S.D.N.Y. June 4, 2007) (exceedance of regulatory limit constitutes injury to property).

## STANDARD OF REVIEW

"Questions concerning class certification are left to the sound discretion of the district court." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). Rule 23 does not permit "free-ranging merits inquiries." *Herman v. Seaworld Parks & Ent., Inc.*, 320 F.R.D. 271, 291 (M.D. Fla. 2017). The underlying merits are relevant only to the extent necessary to evaluate Rule 23. *Id.* at 291.

## ARGUMENT

### I.   THE PROPOSED PROPERTY DAMAGE CLASS SATISFIES ALL REQUIREMENTS OF FED. R. CIV. P. 23

A. Plaintiff Has Proposed an Objective, Reasonable Class Definition that Allows the Court to Easily Ascertain Membership

Implicit in Rule 23(a) is Proposed Class members be distinguished based on Defendant's actions toward them. Environmental classes often track a geographic area impacted by contamination. *E.g.*, *Boggs v. Divested Atomic Corp.*, 141 F.R.D. 58, 62 (S.D. Ohio 1991) (residents living within six miles of radioactive plant); *Stepp v. Monsanto Research Corp.*, Civ. No. 3:91-468, 2012 WL 604328, at *1 (S.D. Ohio Feb. 24, 2012) (all persons within five miles of plant); *Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 474 (S.D. Ohio 2004) (property impacted by defendant's chemicals). "Reference to fixed, geographic boundaries will generally be sufficiently objective for proper inclusion in a class definition." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539 (6th Cir. 2012) *quoting* Moore's Federal Practice §23.21[3].

Multiple lines of evidence, demonstrate that the entire PCA contains dangerous levels of Pollution from Drummond's mining activities. *Supra*. The bounds of the PCA, which are entirely within the footprint of the mine, are depicted in Exs. 2 and 3, and the proposed Classes are defined as:

**Drummond Property Damage Class ("Property Class")**: Any and all persons that own any residential real property in the Oakbridge & Grasslands Communities (collectively, the "Class Area") in Polk County, Florida.

**Medical Monitoring Class**: All persons who have lived in the PCA for more than three cumulative years.[10]

**Fraud Class**: All persons who purchased property in the Oakbridge or Grasslands Communities within 12-years of March 10, 2017.

D.E. 36 ¶111. Using public property records, ownership of PCA homes is easily ascertained. *Navelski*, 244 F. Supp. 3d at 1305 (class members ascertainable through property records). Medical monitoring class members can likewise be located and notified through those records. Accordingly, Plaintiff has proposed an objective, ascertainable class.

B.  <u>The Class is Sufficiently Numerous that Joinder is Impracticable</u>

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. *Colomar v. Mercy Hosp., Inc.*, 242 F.R.D. 671, 675 (S.D.Fla. 2007) (40+ members sufficient). Joinder need not be impossible, but

---

[10] The Medical Monitoring Class definition has been modified to conform with the scientific evidence. *See Andrews v. Plains All Am. Pipeline, L.P*, No. CV154113PSGJEMX, 2019 WL 6647928, at *6 (C.D. Cal. Nov. 22, 2019) (Amendment to class definition proper to ensure class corresponds to the area impacted by pollution based on expert evidence) (citations omitted). As demonstrated below, Plaintiff's experts opine that all persons who have lived in the PCA for more than three cumulative years require medical monitoring.

difficult, inconvenient, or impractical. *Id.*; *In re Carbon Dioxide Antitrust Litig.*, 149 F.R.D. 229, 232 (M.D.Fla. 1993) (citation omitted). Public property and Drummond's real estate records demonstrate there are ~1000 properties in the PCA, satisfying numerosity. See Ex. 2 (aerial of homes).

### C.  There are Questions of Law and Fact Common to the Class

"A single common question is sufficient to satisfy Rule 23(a)(2)." *In re Terazosin Hydrochloride,* 220 F.R.D. 672, 686-87 (S.D.Fla. 2004) (citation omitted). The threshold is met when a defendant has "engaged in a standardized course of conduct that affects all class members." *Id.* The claims "must depend upon a common contention * * * that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Bowe v. Public Storage*, 318 F.R.D. 160, 170 (S.D. Fla 2015) (quoting *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 (2011)). Rule 23(a)(2) does not require that *all* class members have identical claims. *Northrup v. Innovative Health Ins. Partners*, LLC, 329 F.R.D. 443, 452 (M.D. Fla. 2019) (citation omitted). Nor does it require that *all* questions of law or fact be common to all plaintiffs. *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 325 (S.D.Fla. 1996). In environmental cases, establishing Commonality is "straightforward." *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003).

In *Navelski*, commonality was satisfied based on common questions pertaining to defendant's maintenance of the dam, the resulting flooding of the Class Area, and the extent defendant should be held liable. 244 F. Supp. 3d at 1306. Likewise, commonality here is based on Drummond's common conduct including

its 1) discharge of Pollution in the PCA through its mining and reclamation activities; 2) construction of residential homes atop Pollutants; 3) failure to disclose the Pollutants to purchasers; 4) failure to properly remediate the PCA properties, and 5) whether Drummond should be held liable. *Id*.

Not only do Plaintiff's claims arise from a common nucleus of facts stemming from Drummond's common conduct toward the putative Class members, but multiple lines of evidence demonstrate that Drummond discharged and maintained Pollution at dangerous levels across the entire PCA, causing class-wide impacts. *Supra* at pp. 4-10. These facts make this a "simple" exposure case apt for class certification because the pollution "blankets" the entire PCA. *See Freeman*., 895 N.W.2d at 120–29. Cases like the one at bar where, by Drummond's own admission, "the vast majority of the [PCA] has been drastically affected by the phosphate mining process," Ex. 1 at 217:9-223:20, involve a "simple" theory of contamination are "more apt" for class treatment. *Gates v. Rohm & Haas Co*., 655 F.3d 255, 271–74 (3d Cir. 2011) (class certification denied due to "complex" theory of exposure where chemicals "seeped into a shallow aquifer, degraded into vinyl chloride, diffused from the aquifer to the ground above, and evaporated into the air to be carried over the village") (citing *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig*., 241 F.R.D. 435, 447 (S.D.N.Y. 2007) ("courts have certified classes arising out of a single event or course of conduct such as…radiation seepage onto adjoining property from a plant or waste burial site."); *Cook v. Rockwell Int'l Corp*., 151 F.R.D. 378, 388 (D.Colo.1993) (property damage from radioactive substances released into ground); *Boggs v. Divested Atomic Corp*., 141 F.R.D. 58, 67 (S.D.Ohio

12

1991) (property damage, medical monitoring and remediation from radiation)). Because Drummond's discharges and development occurred directly within the footprint of its mine, there are no complex transport or causation questions unique to each property.

### D. Plaintiff's Claims are Typical of the Class Members

Rule 23(a)(3) requires that the claims of the class representatives be typical of the claims of the class. Typicality is satisfied when class members' claims "arise out of the same course of events and are based on the same legal theories." *Bhatt v. Tech Data Corp.*, No. 8:17-CV-2185-T-36AEP, 2017 WL 10295956, at *4 (M.D. Fla. Dec. 28, 2017). "The test for typicality, like commonality, is not demanding." *In re Checking Acct. Overdraft Litig.*, 307 F.R.D. 630, 642 (S.D. Fla. 2015). Typicality merely tests whether "the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000); *Mohamed v. Am. Motor Co., LLC*, 320 F.R.D. 301, 315 (S.D. Fla. 2017) ("Typicality…does not require that all putative class members share identical claims or defenses."). "Indeed, even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *In re Checking*, 307 F.R.D. at 642 (citation omitted). In environmental cases, Typicality is satisfied when the named plaintiffs and the class members are impacted by the same type of contamination caused by the same defendant. *See Navelski*, at 1306 (typicality satisfied even though not all homes flooded at the same time and damages varied).

Mr. Feist's claims are typical because they are based on Drummond's conduct in mining, discharging wastes, reclaiming, developing, failing to disclose, and failing to remediate Pollutants, thereby impacting all properties and people across the PCA. The same factual issues apply classwide and Plaintiff's claims are based on the same legal theories (negligence, strict liability under Fla. St. §376, and fraud). Plaintiff's interests are therefore closely aligned with the class members, and he will advance their mutual interests.

     E.  <u>Mr. Feist Will Fairly and Adequately Protect the Interests of the Class</u>

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The class representative must not have interests antagonistic to those of the class and class counsel must be qualified, experienced, and able to conduct the litigation." *Barry B. Roseman, D.M.D., M.D., Profit Sharing Plan v. Sports & Recreation*, 165 F.R.D. 108, 111 (M.D. Fla. 1996) (citation omitted). In environmental cases, alleged defenses or arguments unique to the proposed representatives, such as time of residence in the affected area, differences in sampling results, or differences in damages do not render the class representatives inadequate. *Navelski*, at 1307; *Boggs*, 141 F.R.D. at 66; *Bentley*, 223 F.R.D. at 485; *Stepp*, 2012 WL 604328. Nor is this requirement affected by varying degrees of injury. The named plaintiffs need not suffer identical harm. Rather the harms may differ in degree among the class "so long as the harm suffered *is of the same type.*" *Bentley*, 223 F.R.D. at 485 (quoting *Boggs*, 141 F.R.D. at 65); *McHugh v. Madison-Kipp Corp., et al*., Civ. No. 11-724, 2012 WL12996296 at *11 (W.D. Wisc. April 16, 2012) (adequacy satisfied despite varying levels of contamination).

14

Here, Plaintiff alleges that his home has been negatively impacted by Pollutants and seeks the same relief as the class members: money damages, remediation, costs of cleanup, and medical monitoring. Plaintiff currently owns property in the PCA and has resided within the PCA for over 10 years. His interests, claims, and any applicable defenses are coextensive with the class members and not antagonistic. Thus, he has a strong incentive to vigorously prosecute these claims. Plaintiff has cooperated in discovery and depositions, and has retained counsel who are qualified and experienced in the prosecution of complex environmental class actions.[11] Counsel possess knowledge of the applicable law; have the resources to achieve the best possible result for the class; and have acted diligently on behalf of the class from initial investigation, through discovery, and with the filing of this Motion.

    F.  Common Questions of Law and Fact Predominate

    **(i)  The Claims Arise from a Common Nucleus of Facts Surrounding Drummond's Conduct**

Rule 23(b)(3) requires that common questions of law or fact predominate. "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule

---

[11] W. Mark Lanier is a nationally recognized trial lawyer who has served as lead counsel in countless toxic tort, class action, and environmental cases. *See* https://www.lanierlawfirm.com/attorney/w-mark-lanier/. Christopher T. Nidel, an MIT Chemical Engineer, has lead dozens of environmental class and toxic tort cases. *See* http://www.nidellaw.com/chris-nidel/. Steven J. German teaches Environmental and Toxic Torts Litigation at the Pace Law School and has been described as "qualified, having experience with complex environmental litigation * * * and class action litigation." *Halley v. Honeywell Int'l, Inc.,* Civ. No. 10-3345 (Salas, J.), 2016 WL 1682943, at *2 (D.N.J. Apr. 26, 2016), *aff'd in part, vacated in part, remanded,* 861 F.3d 481 (3d Cir. 2017); *see also* http://www.germanrubenstein.com/steven.html.

23(b)(3).'" *Tyson Foods*, 136 S. Ct. at 1045 citations and footnotes omitted). This is true "'even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id.* It is not necessary that **_every_** question of law or fact be common, but only that **_some_** questions are common and predominate over the individual questions. *Id.* Here, as in *Navelski*, Drummond's liability to each class member arises out of a "common nucleus of operative facts" stemming from Drummond's conduct toward the putative Class, and the Class Members will rely upon the same evidence to answer core questions surrounding Drummond's liability. *Navelski* at 1309-10. These are the central questions which must be answered for each class members' claims and can therefore be addressed on a class-wide basis. Here, "Defendants either committed the alleged torts or they did not…[t]he answer to this question should be the same for every member of the class." *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 241 F.R.D. 185, 195 (S.D.N.Y. 2007).

As in *Navelski*, the issue of causation is capable of classwide proof. *Navelski* at 1309. Plaintiff's experts have demonstrated, based on multiple lines of common fact and scientific evidence, that the entire PCA experienced elevated radiation levels attributable to a single source: Drummond's mining activities. Indeed, by Drummond's own admission "**_the vast majority of the [PCA] has been drastically affected by the phosphate mining process_**," Ex. 1 at 217:9-223:20, where the "**_radiation materials [] tend toward an average or uniform value over the entire site._**" Ex. 31 at p. 19. These levels nearly unanimously exceed levels determined by EPA, NRC, and other radiation authorities to be protective of human health and

16

the environment, requiring remediation. *Supra* pp. 7-10. Thus, unlike the dearth of scientific evidence, the wide geographic expanse, differing types of contaminants, a mere handful of "sporadic" detections, the lack of causation evidence due to complex exposure pathways, and myriad resulting individualized issues undermining class certification in *Cotromano v. United Techs. Corp.* (No. 10-80840-CIV, 2018 WL 2047468, at *11-12 (S.D. Fla. May 2, 2018)), here we have one contaminant (radioactive waste) within the footprint of a single source (Drummond's mine), and hundreds of thousands of actual measurements throughout this well-defined area demonstrating class-wide contamination above remedial and risk action levels. The overwhelming facts, backed by science and rooted in the law, support a finding of predominance.

**Negligence:** The elements of negligence are (1) duty of care; (2) breach; and (3) injury caused by the breach. *Rementer v. United States,* No. 8:14-CV-642-T-17MAP, 2015 WL 5934522, at *1 (M.D. Fla. Oct. 9, 2015) (Kovachevich, J.) (citation omitted); *Navelski*, 244 F. Supp. 3d at 1309. Here, as in *Navelski*, "the core factual and legal issues with respect to liability," whether Drummond's conduct caused the radioactive pollution "throughout the subject neighborhood," and, if so, to what extent Drummond should be held liable, "are resolvable by proof that is common to all class members." *Navelski,* at 1308-09. "Proof of one plaintiff's claims necessarily will be proof of the others." *Id*.

### *Strict Liability Pursuant to Fla. Stat.§ 376.313(3) and Negligence Per Se*:

Fla. Stat. §376.313(3) creates a strict liability cause of action for the non-negligent discharge of pollution. *Aramark Uniform and Career Apparel, Inc. v. Easton*,

894 So. 2d 20, 28 (Fla. 2004). Plaintiff must prove "the fact of the prohibited discharge or other pollutive condition and that it has occurred." *Id.* at 24. As demonstrated above, Drummond caused a "prohibited discharge" by disposing its radioactive waste across the entire PCA. Ex. 1 at 28:25-32:22 (mining waste discharged back into the footprint of the mine). By discharging wastes at dangerous levels, including above EPA health-based standards, Drummond caused a "pollutive condition" making the PCA "potentially harmful or injurious to human health or welfare…or property or which may unreasonably interfere with the enjoyment of life or property, including outdoor recreation." Fla. Stat. § 376.031(17). Every class member's claim depends on common facts and evidence concerning Drummond's conduct and can therefore be proven classwide.

### *Fraud, Fraudulent Concealment, and Negligent Misrepresentation*:

Fraudulent Concealment arises when defendant intentionally suppresses material facts when a special relationship exists between the parties triggering a duty to speak, such as when one party has special knowledge of material facts or has a duty to say enough to prevent his words from misleading another. *Jerue v. Drummond Co., Inc.*, No. 8:17-CV-587-EAK-AEP, 2018 WL 7461683, at *13 (M.D. Fla. Apr. 19, 2018) (citations omitted). As demonstrated above, Drummond made numerous misrepresentations and omissions concerning the nature, extent, and risks of radiation across the PCA, all of which are inherently classwide as they focus on Drummond's acts and omissions. Because the claim is based on an omission, as opposed to an affirmative misrepresentation, all class members are similarly affected, and class treatment is proper. *See Kluge v. Crews Lake Road &*

*Bridge Dist.*, No. 82-933-CIV-T-15, 1985 U.S. Dist. LEXIS 22530 (M.D. Fla. Feb. 15, 1985). Like Fraudulent Concealment, Plaintiff's Negligent Misrepresentation claim focuses on Defendants' acts and can be certified for the same reasons. *Principal Bank v. First Am. Mortg.*, Inc., 2012 WL 473507, at *5 (M.D. Fla. Feb. 14, 2012).

### (ii) The Economic Damage Can be Proven Class-Wide

Though not a necessary element of certifying a liability class,[12] damages *can* be determined on a class-wide basis using a common methodology known as hedonic regression analysis. Environmental contamination may diminish property value. Ex. 17 at pp. 2-3. Hedonic regression is "the standard economic approach to measuring the impact of environmental contamination on property values" and can ascertain diminution in property value on a class-wide basis. *Id.* at p. 7; *see also, e.g., In re Oil Spill by the Amoco Cadiz,* 954 F.2d 1279, 1320 (7th Cir.1992). "[R]egression analysis permits an inference of causation, and of the size of the effect" such that impact can be proven through common evidence; *Pickett v. IBP, Inc.*, No. CIV. 96-A-1103-N, 2001 WL 34886460, at *9 (M.D. Ala. Dec. 26, 2001); *see also, Sterling v. Velsicol Chemical Corp.,* 855 F.2d 1188, at 1212 (6th Cir. 1988)

---

[12] Even if damages must be calculated on an individual basis, where issues of liability predominate, class certification is appropriate. *Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1239 (11th Cir. 2016) ("The presence of individualized damages issues does not prevent a finding that the common issues in the case predominate.") (citation omitted). The "black letter rule" recognized in every circuit is that "individual damage calculations generally do not defeat a finding that common issues predominate." *Id.*, quoting William B. Rubenstein, Newberg on Class Actions § 4:54 (5th ed); *Navelski*, 244 F. Supp. 3d at 1309 *In re Deepwater Horizon*, 739 F.3d 790, 810-16 (5th Cir. 2014); *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 374–75 (3d Cir. 2015); *Mejdrech* , 319 F.3d at 911; *LeClercq v. Lockformer* Co., Civ. No. 00-7164, 2001 WL 199840, at *7 (N.D. Ill. Feb. 28, 2001) ("There is ample support for certifying a class action in a contamination case even though there may be individualized issues of damages."); *see also* McLaughlin on Class Actions § 4:19 (12th ed. 2015).

(applying formula to determine diminution in property value). Drummond's experts agree that "regression models can be used to construct estimates of average (mean) impacts for the category of properties being analyzed." Ex. 32 at pp. 19, n.81; Ex. 33 at 78:22-79:5, 147:23-148:11, 154:1-19. Damages can then be distributed to each class member on a formulaic basis. Ex. 17 at p.7; *In re Oil Spill,* 954 F.2d at 1320.

G. A Class Action is Superior to Any Alternative Form of Adjudication

Rule 23(b)(3) requires a finding that "[the] class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The Court looks to the four non-exclusive factors listed in Rule 23(b)(3): (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. *Fosbrink v. Area Wide Protective, Inc.,* 325 F.R.D. 474, 483 (M.D. Fla. 2018).

Here, no known competing actions have been filed and there is no evidence of any competing interest in controlling the litigation. Concentrating the litigation in this Court is desirable because the Court is familiar with this matter, and it is the proper venue for claims arising from Drummond's local activities. Managing individual actions will clearly be more onerous than a class action. Requiring duplicative discovery and multiple trials—here, 1000 individual suits—regarding the same issues would be wasteful, unfair to the litigants, and would consume

judicial resources. *See Martin v. Behr Dayton Thermal Prod. LLC*, 896 F.3d 405, 416 (6th Cir. 2018), *cert. denied*, 139 S.Ct. 1319.[13] The magnitude of this environmental case (1000 properties), coupled with its attendant cost of experts (15 to date), discovery, and trial, could also render pursuit of individual claims economically infeasible. *Id.* at 417. Rule 23(b)(3) aims to vindicate "the rights of groups of people who individually would be without effective strength to bring their opponent into court at all." *Amchem Prod. v. Windsor*, 521 U.S. 591, 617 (1997). Class certification will also benefit Drummond. Issues resolved in a class action typically bind all the class members. However, in individual cases, a defendant's success on an issue as to one plaintiff may not be binding on others. *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979); *Gunnels v. Healthplan Services, Inc.*, 348 F.3d 417 (4th Cir. 2003) (noting that class certification "protects *the defendant* from inconsistent adjudications"); 5 Moore's Federal Practice §23.02; Newberg on Class Actions §17:51 (4th ed.).  Superiority is satisfied.

---

[13] *See also, Ludwig v. Pilkington North America, Inc., 2003* WL 22478842 at *7 (N.D.Ill.2003) (multiple trials involving the same evidence deemed inefficient); *Mejdreck*, 2002 WL 1838141, at *7 ("it would be wholly inefficient" to try thousands of separate pollution cases alleging the same misconduct); *LeClercq*, 2001 WL 199840, at *7 (proof "would be identical" as to "history of operations, the spillage, the impact on the land, soil, and water, [and] possible remedies" and "[r]epetitive discovery for individual cases on the same core issues would be wasteful"); *Cook*, 151 F.R.D. at 480 (inefficient to duplicate expert testimony that will "apply to the classes as a whole."); *Wehner v. Syntex Corp.*, 117 F.R.D. 641, 645 (N.D. Cal. 1987). ("Significant judicial economies are served by trying the common issues [of contamination]."); *Claborne v. Hous. Auth. of New Orleans*, 165 So.3d 268, 284 (La. Ct. App. 2015) ("the risk in trying some 2900 individual cases could result in non-uniformity and inconsistent adjudications on the common issues.").

## II.   INJUNCTIVE RELIEF IN THE FORM OF REMEDIATION OF PCA PROPERTIES SHOULD BE CERTIFIED UNDER RULE 23(b)(2)[14]

As demonstrated above, Drummond's mining activities resulted in dangerous levels of radiation requiring class-wide remediation Ex. 6 at p. 4; Ex. 26 at 242:3-13; 295:23–296:9, and the same cleanup method applies across the entire PCA. Ex. 22 at 234:8-235:4. Certification under Rule 23(b)(2) is appropriate because Drummond's role in contaminating and failing to remediate the PCA applies generally to all putative Class Members so that final injunctive relief in the form of remediation is appropriate for the class as a whole. Fed. R. Civ P. 23(b)(2).

While Fed. R. Civ P. 23(b)(2) classes have no predominance or superiority requirements, the claims must be cohesive. *Murray v. Auslander,* 244 F.3d 807, 811 (11th Cir. 2001). As demonstrated above, the claims are cohesive because all putative Class Members share the significant common traits that Drummond's Pollution impacted their properties above cleanup standards and Drummond failed to properly remediate the Pollutants. Thus, Rule 23(b)(2) class certification is appropriate. *Bentley*, 223 F.R.D. 471; *Olden v. LaFarge Corp*., 203 F.R.D. 254 (E.D. Mich. 2001); *O'Connor v. Boeing N. Am., Inc*., 184 F.R.D. 311 (C.D. Cal. 1998).

## III.   INJUNCTIVE RELIEF IN THE FORM OF MEDICAL MONITORING SHOULD BE CERTIFIED UNDER RULE 23(b)(2)

A Medical Monitoring claim requires (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly

---

[14] The Court may certify both a b(3) money damages class and a b(2) injunctive class. *Cook*, 151 F.R.D. at 388.

increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles. *Jerue*, at *16–17 (citing *Petito v. A.H. Robins Co.*, 750 So. 2d 103, 106–07 (Fla. Dist. Ct. App. 1999)). Radiation exposure is unlike exposure to other pollutants because there is no safe exposure level, making radiation exposure especially dangerous. *Supra* pp. 7-8.

As demonstrated above, the PCA is contaminated with Pollution significantly above background levels and health-based cleanup standards, resulting in the increased risk of cancer, including thyroid cancer and leukemia. Mr. Bland opines that annual above-background dose to average residents in the PCA is between 250 to 270 millirem.  Ex. 12 at pp. 14, 27-29.  These average exposures are more than six-times EPA limits and exceed Florida's much more lenient limit of 100 mrem per year. Ex. 6 at pp. 3-4; Ex. 12 at pp. 14, 27-29. Dr. Felsher opined that all adults receiving cumulative doses of 500 millirem or children receiving cumulative doses of 250 millirem will benefit medically from access to screening. Ex. 15 at pp. 26, 28.  Due to the presence of actual soil radiation causing the class-wide exposures as demonstrated by Mr. Bland, it is more likely than not that every individual living in the PCA for more than two cumulative years has sufficiently increased risk necessitating medical monitoring. Ex. 12 at p. 29; Ex. 15 at pp. 26, 28. The prescribed medical screening includes periodic physical examinations,   clinical   laboratory   tests,   advanced   medical   imaging   (non-

radioactive) to proactively detect the development of latent disease, which is reasonably necessary based on contemporary science and medicine because these cancers have a better prognosis when detected early. *Id.* at pp. 28-30. This regime would be different than that which Plaintiffs would normally undergo in the absence of such exposure, as such tests would otherwise be unnecessary. *Id.* at pp. 26-28; Ex. 35 at 162:10-163:13. Class certification of the medical monitoring claim is proper. *See Day v. NLO*, 851 F. Supp. 869, 881 (S.D. Ohio 1994) (certifying b(2) radiation exposure medical monitoring class); *O'Connor*, 184 F.R.D. 311.

## IV.   IN THE ALTERNATIVE, AN ISSUES CLASS SHOULD BE CERTIFIED UNDER RULE 23(c)(4)

The Court may alternatively certify specific issues pursuant to Rule 23(c)(4). The Sixth Circuit (with the tacit approval of the U.S. Supreme Court) recognized that an issues class may help resolve environmental cases, like the one at bar. *See Behr Dayton*, 896 F.3d at 414-15; *see also, Manual for Complex Litigation, Fourth*, § 21.24.[15] Here, as in *Behr Dayton*, there are at least seven issues that can be resolved class-wide based on common proof and their resolution will substantially advance resolution of this case including, but not limited to:

1. Drummond's role in polluting the PCA through its historic mining and reclamation activities resulting in dangerous levels of radiation across the PCA;

---

[15] *Behr Dayton* involved indoor air vapor intrusion from two groundwater plumes migrating underground from two separate facilities. Rule 23(b)(3) class certification was denied because, under Ohio law, landowners do not have an ownership right to the groundwater beneath their property, therefore each property owner had to prove actual vapor intrusion. The complex travel of contaminants from facility to groundwater to indoor air through underground barriers and building foundations was too complex for class-wide proof. The causation evidence here is far simpler, with Pollution underlying the entire PCA, as demonstrated above.

    2.    Whether it was foreseeable to Drummond that its actions could cause the Plaintiff's resultant injuries;

    3.    Whether Drummond negligently or intentionally failed to investigate and remediate Pollution;

    4.    Whether Drummond's discharge of radioactive mining wastes into the land beneath the PCA constitutes a violation of Fl. Stat. § 376;

    5.    Whether Drummond was required to and failed to disclose the presence of Pollution;

    6.    Whether Drummond was required to and failed to remediate Pollution across the PCA; and

    7.    Whether Pollution is present across the entire PCA.

These questions "need only be answered once because the answers apply in the same way to each property owner." *Behr Dayton*, at 414. In the wake of *Behr Dayton*, Courts in this Circuit have recognized "a more permissive approach to Rule 23(c)(4) certification" "on the theory it better serves the purposes of Rule 23 by providing courts with greater flexibility in managing potential class actions." *In re Chiquita Brands Int'l Inc. Alien Tort Statute & S'holders Derivative Litig.*, 331 F.R.D. 675, 687 (S.D. Fla. 2019). Furthermore, the substantive law underlying the claims is uniform and partial certification will have no apparent constitutional problems, such as Reexamination. *See Behr Dayton*, at 417.

## CONCLUSION

    For the reasons set forth above, the classes should be certified.

Dated:   August 20, 2021                    Respectfully Submitted,

/s/  W. Mark Lanier
**THE LANIER LAW FIRM, P.C.**
W. Mark Lanier, Esq. (*pro hac vice*)
Alex Brown, Esq. (*pro hac vice*)
Christopher L. Gadoury, Esq. (*pro hac vice*)
10940 W. Sam Houston Pkwy N
Suite 100
Houston, TX 77064
Telephone: (713) 659-5200
wml@lanierlawfirm.com
alex.brown@lanierlawfirm.com
chris.gadoury@lanierlawfirm.com

**NEAL O'TOOLE**
Lilly, O'Toole & Brown, LLP
310 E Main St
PO Box 50
Bartow, FL 33831
863/533-5525
Fax: 863-533-0505
Email: notoole@otoolepa.com

**GERMAN RUBENSTEIN, LLP**
Steven J. German, Esq. (*pro hac vice*)
Joel M. Rubenstein, Esq. (*pro hac vice*)
19 West 44th Street, Suite 1500
New York, NY 10036
Telephone: (212) 704-2020

**NIDEL & NACE PLLC**
Christopher T. Nidel, Esq. (*pro hac vice*)
Jonathan Nace, Esq. (*pro hac vice*)
One Church Streets, Suite 802
Rockville, MD 20850
Telephone : (202) 780-5153

*Trial Counsel for Plaintiffs and the Classes*

26

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 20, 2021, a true and correct copy of the foregoing Plaintiff's Motion for Class Certification and Legal Memorandum in Support Thereof was served electronically on all parties registered to receive electronic notice via the Court's CM/ECF system.

/s/  *W. Mark Lanier*
W. Mark Lanier

27