## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JOHN J. JERUE (Dismissed) and
MICHAEL J. FEIST,

      Plaintiffs,

v.                                 Case No. 8:17-cv-00587-TPB-AEP

DRUMMOND COMPANY, INC.

      Defendant.
_____

## **PLAINTIFF'S REPLY TO DEFENDANT DRUMMOND COMPANY, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

## TABLE OF CONTENTS

I. INTRODUCTION ...........................................................................................1

II. DRUMMOND'S MISSTATEMENTS AND IMMATERIAL DISPUTES OF FACT.........................................................................................................1

1.  Feist's Property Was Developed by Drummond Within the Polluted Mine and is Contaminated by Radiation.......................................................1

2.  All Properties Within the PCA Contain Radiation that is Both Elevated and that Is, or May be, Potentially Harmful or Injurious to Human Health or Property ...................................................................................2

3.  Plaintiff's Ample Expert Evidence Demonstrates that All PCA Properties Require Remediation and that Individualized Inquiries are Unnecessary ....4

4.  None of Plaintiff's Claims Require Proof of a Manifest Health Impact .........5

III. LEGAL ARGUMENT ..................................................................................6

1.  The Class Definitions Are Based on An Area Impacted by Radiation and Membership is Readily Ascertainable Based on Property Records ...............6

2.  Common Questions of Law and Face Predominate because Plaintiff's Claims Arise from a Common Nucleus of Facts Surrounding Drummond's Conduct ...................................................................................7

3.  Neither Uniform Conditions nor Individualized Testing is Required by Rule 23 ...................................................................................................10

4.  Feist's Claims Are Typical of, and His Interests Are Aligned With, The Members of The Classes He Seeks to Represent .............................................11

5.  Opposition to a Class—Especially When Premised on False Information— Does Not Defeat Adequacy .................................................................12

6.  A Class Action is Far Superior to Drummond's Proposal to Have this Court Manage 1,000 Separate Trials of Negative Value Cases.................................14

7.  Individual Damages Calculations Do Not Preclude Class Certification......15

8.  Drummond's Opposition to the Rule 23(b)(2) Injunctive Relief Classes has No Legal Foundation .........................................................................16

9. The Individualized Issues Cited by Drummond Are Irrelevant to a Rule 23(C)(4) Issues Class ................................................................................. 17

**IV. CONCLUSION** ........................................................................................... **17**

# TABLE OF AUTHORITIES

**Cases**                                                                                                     **Page(s)**

*Arnold v. State Farm Fire & Cas. Co.,*
2020 WL 6879271 (S.D. Ala. Nov. 23, 2020) ................................................................. 15

*Bentley v. Honeywell Int'l., Inc.,*
223 F.R.D. 471, 485 (S.D. Ohio 2004) ........................................................................... 11

*Boggs v. Divested Atomic Corp.,*
141 F.R.D. 58, 62 (S.D. Ohio 1991) ............................................................................... 11

*Brottem v. Crescent Res. LLC,*
2006 WL 1529327 (M.D. Fla. May 24, 2006) ................................................................. 2

*Carriuolo v. General Motors Co.,*
823 F.3d 977, 988 (2016) ........................................................................................ 15, 16

*Comcast Corp. v. Behrend,*
569 U.S. 27, 133 S. Ct. 1426 (2013).......................................................................... 15, 16

*Cotromano v. United Technologies Corp.,*
2018 WL 2047468 (S.D.Fla. May 2, 2018) ................................................................. 7, 8

*Dickens v. GC Servs. Ltd. P'ship,*
706 F. App'x 529, 538 (11th Cir. 2017) ......................................................................... 15

*Groover v. Michelin N. Am., Inc.,*
192 F.R.D. 305, 306 (M.D. Ala. 2000) ........................................................................... 14

*Holmes v. Cont'l Can Co.,*
706 F.2d 1144, 1154 (11th Cir. 1983) ....................................................................... 10, 16

*In re Checking Acct. Overdraft Litig.,*
286 F.R.D. 645, 660 (S.D. Fla. 2012).......................................................................... 8, 12

*Jacobi v. Bache & Co., Inc.,*
1972 WL 560 at *4 (S.D.N.Y.1972)................................................................................ 14

*Lee-Bolton v. Koppers, Inc.,*
319 F.R.D. 346 (N.D. Fla. 2017) ...................................................................................... 7

*Leidel v. Coinbase, Inc.,*
2019 WL 2578268 (S.D. Fla. June 24, 2019) ................................................. 14

*Martin v. Behr Dayton Thermal Prod. LLC,*
896 F.3d 405 (6th Cir. 2018), cert. denied, 139 S. Ct. 1319 (2019)............................ 17

*McHugh v. Madison-Kipp Corp., et al.,*
Civ. No. 11-724 (W.D. Wisc. April 16, 2012) ............................................. 11

*Navelski v. Int'l Paper Co.,*
244 F. Supp. 3d 1275, 1308-09 (N.D. Fla. 2017) ........................................... 7

*O'Connor v. Boeing N. Am., Inc.,*
184 F.R.D. 311, 327–28 (C.D. Cal. 1998) ................................................. 6, 7

*Parrish v. Freightliner, LLC,*
471 F.Supp.2d 1262, 1268 (M.D. Fla. 2006) ............................................... 13

*Petito v. A.H. Robins Co.,*
50 So. 2d 103 (Fla. Dist. Ct. App. 1999) ................................................. 5

*Rink v. ChemiNova, Inc.,*
203 F.R.D. 648 (M.D. Fla. 2001) ......................................................... 17

*St. Bernard Par. Gov't v. United States,*
126 Fed. Cl. 707, 738 (2016), rev'd on other grounds,
887 F.3d 1354 (Fed. Cir. 2018) .......................................................... 10

*Tyson Foods, Inc. v. Bouaphakeo,*
136 S. Ct. 1036, 1044-45 (2016) ......................................................... 9, 10

*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. 338 (2011) ..................................................................... 8

*Waters v. Barry,*
711 F.Supp. (D.D.C.1989) ................................................................ 14

## STATUTES

Fla. Stat. § 376 ............................................................... 4, 5, 9, 10

Fla. Stat. § 376.031(17) ...................................................... 4, 5

Fla. Stat. § 376.313 .......................................................... 1, 2

## RULES

Federal Rule Civil Procedure 23(a)(3) ................................................................. 12

Federal Rule Civil Procedure 23(b)(2) ................................................................. 16

Federal Rule Civil Procedure 23(b)(3) ................................................................. 10

Federal Rule Civil Procedure 23(c)(4) ................................................................. 17

Federal Rule Civil Procedure 26(a) ..................................................................... 13

Federal Rule Civil Procedure 26(e) ..................................................................... 13

Federal Rule Civil Procedure 37(c)(1) ................................................................. 13

## OTHER AUTHORITIES

*Moore's Federal Practice - Civil* § 23.25 ........................................................ 14

*Newberg on Class Actions* § 1840 (3rd Ed. 1992) ......................................... 15

*Wright, Miller & Kane* § 1760 ........................................................................ 6

## I.  INTRODUCTION

Drummond's Memorandum in Opposition (D.E. 155) ("Opposition" or "Def. Br.") is premised on several recurring themes. Most are misleading. Few have legal support. None are consequential to the Rule 23 inquiry. Drummond's Opposition is also conjectural, and its attempt to attack the merits of Plaintiff's claims is premature. As a result, Drummond lacks the expert, legal, and evidentiary support necessary to defeat Class Certification. Instead, Drummond's Opposition does little more than argue which side should succeed before the jury, which is immaterial to this Court's Rule 23 analysis.

## II. DRUMMOND'S MISSTATEMENTS AND IMMATERIAL DISPUTES OF FACT

### 1.  Feist's Property Was Developed by Drummond Within the Polluted Mine and is Contaminated by Radiation

Drummond states "Poseidon Mines, did not conduct mining operations on or near Feist's condo" and that "[s]uch mining occurred prior to 1950 by owners/operators unrelated to Drummond * * *." Def. Br., p. 3. This, according to Drummond "eliminates Feist's claim under Fla. Stat. §376.313 and common law which requires him to prove a discharge of pollution onto his property." Def. Br., p. 3.

Undisputedly, Feist's condominium geographically rests on radioactive soils within the former mine. *See* D.E. 162-8 (Def. Ex. 27-C) *compare* Pl. Ex. 37 (map 8 of 9 more clearly depicting areas of disturbed soils underlying PCA). Whatever action taken by its predecessor Poseidon, certainly Drummond discharged radioactive materials into the land thorough its reclamation and

development. *See* D.E. 142 at p. 2 ("Pl. Br."). Drummond also developed the land for residential use, including Feist's, without properly remediating it for that use. *Id.* 4-6. Even if Drummond hadn't itself "performed" the discharge, Fla. Stat. § 376.313 only requires a "pollutive condition," established here through the presence of radioactive material across the PCA. *See Brottem v. Crescent Res. LLC*, No. 6:06-cv-306, 2006 WL 1529327, at *4 (M.D. Fla. May 24, 2006). By Drummond's own admission "the vast majority" of the PCA is "drastically affected" by radiation. Muncher, Tr., 217:9-223:20 (Pl. Ex. 1, D.E. 142-2). Drummond's common law argument fares no better, as none of Plaintiff's common law claims require proof of primary mining or a discharge ***by Drummond***. As discussed below, elevated radioactivity is present on and around Feist's property, and across the entire PCA, causing harm to Feist and the class members.

### 2. All Properties Within the PCA Contain Radiation that is Both Elevated and that Is, or May be, Potentially Harmful or Injurious to Human Health or Property

Drummond next argues that mining and reclamation activities were "variable," did not produce "uniform" conditions throughout the Development, and that "homes in the Development are safe from harmful radiation" (Def. Br., pp. 6-10), including Feist's indoor and outdoor spaces. Because Feist "has safe radiation levels," Drummond argues commonality and predominance are defeated. *Id.* at 18-22. Drummond's argument is misleading, confused, and plainly false. More importantly, it is also legally irrelevant. *Infra*.

First, the "vast majority" of the PCA is "drastically affected" by radioactivity. *See* Pl. Br., pp. 4-6. Drummond's own stated goal was to achieve "an average or uniform value" of "radiation materials" "over the entire site." D.E. 147-1, p.19 (Pl. Ex. 31).[1]

Second, Drummond fails to define the term "safe radiation levels" or provide evidence of how levels are safe. Whether applying the linear non-threshold ("LNT") or the linear quadratic non-threshold model as preferred by Drummond's experts, there is no safe level of radiation exposure. *See* Pl. Br., p. 23.[2] Moreover, the presence of indoor radiation levels of 6.9 to 7.2 μR/hr at Feist's property (versus 6 μR/hr background three feet above soil) (*see* Bland Rebuttal, p. 13 (D.E. 143-2) (Pl. Ex. 12)), touted by Drummond as being "safe" or "natural," is further evidence of elevated radioactivity across the PCA. Background levels in Feist's second floor condominium should be significantly less than the background (established at three-feet above the soil) due to the distance from the source (the earth) and the presence of concrete and other shielding. *Id*.

Worse yet, Drummond misrepresents the radiation levels at Feist's property by ignoring hundreds of readings taken by Plaintiff's expert demonstrating radioactivity several times greater than background on vast

---

[1] Drummond's argument is also misleading. The top six inches of soil presents the greatest radioactivity risk. Whicker Tr., 58:6-12 (D.E., 146-6) (Pl. Ex. 25). By Drummond's own admission this his is an area of homogeneity, whereas heterogeneity exists deeper. Travers, Tr., 130:24-134:15 (D.E., 146-3) (Pl. Ex. 22).

[2] Drummond argues on a class-wide basis that "homes in the development are safe from harmful radiation," with no individualized assessment. Def. Br., p. 10.

portions of the property. Instead, Drummond elevates its expert's **one reading** in **one discrete location** (the second "outdoor" reading was across the street) of Feist's front yard, thereby avoiding radioactivity which, even by Drummond's standard, would be deemed "unsafe." *See* Bland Rebuttal, p. 13 (D.E. 143-2).[3] These conditions plainly satisfy Plaintiff's Fla. Stat. §376 claim, which simply requires that radiation "may be potentially harmful or injurious to human health or welfare * * * or property * * * or which may unreasonably interfere with the enjoyment of life or property, including outdoor recreation." § 376.031(17).

### 3. Plaintiff's Ample Expert Evidence Demonstrates that All PCA Properties Require Remediation and that Individualized Inquiries are Unnecessary

Citing Bland's deposition testimony, Drummond argues that "remediation requires a property-by-property evaluation." Def. Br., p. 24. As a threshold matter, remedy is inherently a merits issue which is extraneous to the Rule 23 inquiry. Substantively, Drummond misrepresents Bland's testimony. Bland articulated a class-wide need for remediation, testifying that remediation is required "in all the properties" and "across the area" because "in all the properties" the levels were "clearly above levels [where] remediation should be undertaken." Def. Ex. 49, 245:17-246:3. Drummond's reference to a "property-by-property" evaluation reflects the unremarkable fact that each property during

---

[3] For similar reason, and as demonstrated above, the DOH's Williamson testimony that "there is no evidence of harmful radiation or health risk to any resident" (Def. Br., p. 4) is misguided. It is premised on erroneous sampling. In any event, Drummond has not disclosed Williamson as an expert on the health effects of radiation and his testimony warrants no weight as an expert.

remediation may ultimately require differing amounts of soil excavation. But, that too is immaterial to the Rule 23 analysis.[4]

### 4.   None of Plaintiff's Claims Require Proof of a Manifest Health Impact

Drummond argues that Feist has failed to provide evidence of a "harmful dose or adverse health effect to himself or others." Def. Br., p. 24. Here, again, Drummond's argument is immaterial to Rule 23. Plaintiff is not alleging personal injury or any manifest illness as a result of the radioactivity, and none of Plaintiff's claims require proof of manifest adverse health effects. Plaintiff's Fla. Stat. §376 claim simply requires that the pollutants "may be potentially harmful or injurious to human health or welfare * * * or property * * *." § 376.031(17). Medical monitoring is reserved for those at increased risk of latent illness, but who have not yet suffered such illness or exhibited symptoms. *Petito v. A.H. Robins Co.*, 50 So. 2d 103 (Fla. Dist. Ct. App. 1999). Members of the medical monitoring class require such screening based on the risks posed by their exposures, not on their manifest injuries or symptoms. Pl. Br., pp. 22-23.

_____

[4] Drummond's reference to the Florida remediation "standard" as setting a bright line trigger for "remediation" (Def. Br., p. 13) further supports class certification, as it suggests that all homes **where modeled radiation exposures based on assumptions and averages** exceeding this standard require remediation. *See below.* Drummond's choice of the Florida standard (as opposed to standards set by USEPA or other health agencies), and even whether Plaintiff can demand remediation of his property separate from any standard, are merits issues.

### III.   LEGAL ARGUMENT

### 1.   The Class Definitions Are Based on An Area Impacted by Radiation and Membership is Readily Ascertainable Based on Property Records

Consistent with legal precedent and the scientific evidence, the classes are defined based on the geographic area of radioactive impact and class membership is easily ascertained using public property records. *See* Pl. Br., pp. 9-10. With no supporting caselaw, Drummond argues that the classes are over-inclusive because some residents oppose the claims and requested cleanup. Def. Br., p. 18. As demonstrated above (p. 2), this "opposition" is dubious and class certification may not be denied on this basis. Whether a particular property ultimately chooses to partake is irrelevant to ascertainability.

Drummond's challenge to the ascertainability of the medical monitoring class fares no better. Drummond cites no law requiring "dose reconstruction" to ascertain the class. To the contrary, "Medical Monitoring Class members are ascertainable by the fact that they lived or worked in the Contamination Area." *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 327–28 (C.D. Cal. 1998). Property records make this class of "all persons who have lived in the PCA for more than three years" readily ascertainable. "The class need not be 'so ascertainable that every potential member can be identified at the commencement of the action.'" *Id.* citing Wright, Miller & Kane, § 1760 at 117. "As long as 'the general outlines of the membership of the class are determinable at the outset of the litigation, a class will be deemed to exist.'" *Id.* at 118. Thus, like here, "a class will be found to exist if the description of the class is definite enough so that it is administratively

feasible for the court to ascertain whether an individual is a member." *Boeing*, 184 F.R.D. at 319

### 2. Common Questions of Law and Fact Predominate because Plaintiff's Claims Arise from a Common Nucleus of Facts Surrounding Drummond's Conduct

Drummond's conduct here resulting in radiation blanketing the PCA is analogous to Defendant's conduct resulting in a dam collapse and water blanketing the class area in *Navelski v. Int'l Paper Co.* (244 F. Supp. 3d 1275, 1308-09 (N.D. Fla. 2017)). Though Drummond proclaims that *Navelski* is distinguishable, it fails to explain why. Def. Br., p. 21. Drummond instead deflects, citing two truly distinguishable cases: *Cotromano v. United Technologies Corp.*, 2018 WL 2047468 (S.D.Fla. May 2, 2018) and *Lee-Bolton v. Koppers, Inc.*, 319 F.R.D. 346 (N.D. Fla. 2017). Drummond's regurgitation of seemingly relevant – yet entirely generic and *irrelevant* – text from these cases does not advance their relevance. Def. Br., pp. 20-22. Like here, these cases involved environmental injuries. But unlike here, the *Cotromano* plaintiffs could not overcome the lack of scientific evidence, the enormous geographic expanse of alleged impacts, varying contaminants, a handful of "sporadic" detections, complex exposure pathways, and myriad resulting individualized issues undermining class certification. *Cotromano*, 2018 WL 2047468 *11-12; *see also* Pl. Br., p. 16. Likewise, certification was denied in *Lee Bolton* due to the presence of alternate sources of contamination, unreliable analytical methods, inadequate evidence linking contaminants to defendant's facility, and unreliable statistical data demonstrating that each property was contaminated. At 354-55; 372.

Here, in contrast to *Cotromano* and *Lee Bolton*, there is one contaminant (*i.e.*, radiation) within the footprint of a single source (*i.e.*, Drummond's mine), and hundreds of thousands of actual measurements demonstrate class-wide contamination based on reliable methods, robust scientific and statistical proof, bolstered by Drummond's admission that "the vast majority of the [PCA] has been drastically affected by the phosphate mining process" with an "average or uniform value" of "radiation materials" "over the entire site."[5]

Drummond's litany of "individualized issues" has no bearing on Rule 23, though some clearly support class certification. For instance, whether Plaintiff has a legal basis to seek class-wide remediation (Def. Br., p. 24) is plainly a common legal issue. So, too, is the question of whether the statute of limitations has expired based on purported decades-old public knowledge. Def. Br., p. 7.[6] And since Drummond claims it "fully disclosed" the presence of radiation to the public (Def. Br., p. 3), any misrepresentations or omissions can be resolved class-wide. Though not required under Rule 23, Drummond even concedes that property diminution can be determined class-wide. By pointing to a "community" "which has enjoyed stable and increasing home values" that "have increased (not decreased) since this case was filed in 2017," but risks being

---

[5]Drummond misrepresents *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). Drummond incorrectly argues that "[t]o certify a class, Feist must be able to prove his individual claims, and thereby prove the putative class claims "in one stroke." Def. Br., p. 5. In fact, *Dukes* held that class certification is proper when "a common contention * * * that is central to the validity of each one of the claims" can be resolved "in one stroke" (at 350), which Plaintiff has demonstrated here.
[6]Individualized defenses do not necessarily destroy predominance. *In re Checking Acct. Overdraft Litig.*, 286 F.R.D. 645, 660 (S.D. Fla. 2012).

"stigmatized" by being called a "'contaminated' class area," plainly Drummond views the financial harms as real and the impact felt class-wide. Def. Br., 1-2. Most glaringly, Drummond relies on class-wide "averages" and "models" in its misguided bid to defeat class certification. Specifically, Drummond argues that "harmful doses of radiation cannot be proved on a class-wide basis," touting the need for individualized determinations. However, in arguing this it relies on Florida's remedial requirements when the "annual dose" exceeds 500 millirems above background. Def. Br. at 13. Florida's standard is applied, not based on individual doses, but the way plaintiff proposes here—using averages and modeled assumptions for a "class." *See* D.E. 164-6, pp. 24-25 (example calculation). Thus, Florida's methods, touted by Drummond, are consistent with Plaintiff's and readily applied class-wide. Whether Florida's limit is protective is a merits issue.

Drummond's other "individualized issues" are either fabricated or hopelessly confused. For instance, neither strict liability pursuant to Fla. Stat. §376, negligence *per se*, nor common law negligence requires any calculation of "harmful dose or adverse health effects." Def. Br. 24. This determination can, and has been, made class-wide. Further, individual considerations of shielding, time away from home, soil ingestion, and rental status are immaterial here, just as in the Florida method. Feist's reliance is not merely on "averages," rather he relies on robust statistical evidence to establish class-wide impacts. *See Tyson Foods, Inc. v. Bouaphakeo,* 136 S. Ct. 1036, 1044-45 (2016). The fact that outdoor radiation surveys across the PCA, used *in conjunction with* indoor readings, are one line of

evidence demonstrating those impacts, is immaterial. One's outdoor space is integral to his property and the potential for harm thereupon is a damage and one explicitly recognized by §376. Further, any evidence of "opposition" to this case is dubious. Residents who truly oppose having their property rid of harmful radiation are protected by Rule 23's opt-out provision. *See Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1154 (11th Cir. 1983). Finally, whatever remedial alternative is implemented is a premature merits question. All properties require remediation. *See* pp. 8-9, *supra*.

### 3. Neither Uniform Conditions nor Individualized Testing is Required by Rule 23

Drummond cites no Rule 23 precedent for an environmental case requiring "uniform conditions," as those conditions seldom, if ever, exist in reality.

> If the standard for predominance required "forensic inspection, analysis, and evaluation of each property," no class could ever be certified for damages.
>
> * * *
>
> The "no two properties are alike" argument [] was rejected by the Advisory Committee that drafted FRCP 23 * * *. This principle also was affirmed * * * in *Tyson Foods, Inc. v. Bouaphakeo*, [which] held that "representative evidence" can be used to satisfy FRCP 23(b)(3)'s predominance inquiry, rejecting the requirement of "person-specific" evidence of liability. As such, *Tyson Foods* is dispositive of the [] argument that the predominance inquiry cannot be established [where] some Plaintiffs' properties may have experienced more [impacts] than others.

*St. Bernard Par. Gov't v. United States*, 126 Fed. Cl. 707, 738 (2016), *rev'd on other grounds*, 887 F.3d 1354 (Fed. Cir. 2018). Thus, it is not necessary for every property to experience precisely the same amount – or even any – pollution. *Tyson Foods*, at 1051 ("hundreds of class members suffered no injury"); *see also*

*McHugh v. Madison-Kipp Corp., et al.*, Civ. No. 11-724 (W.D. Wisc. April 16, 2012), p.11 (Pl. Ex. 40) (varying levels and severity of contamination across the class); *Bentley v. Honeywell Int'l., Inc.*, 223 F.R.D. 471, 485 (S.D. Ohio 2004) ("The harm suffered by the named plaintiffs may differ in degree * * * so long as the harm suffered is of the same type.") quoting *Boggs v. Divested Atomic Corp.*, 141 F.R.D. 58, 62 (S.D. Ohio 1991) 65) (same - radiation exposure).

At the heart of Drummond's Opposition is the fiction that each class property requires individual testing and dose assessments to determine the extent of pollution, thereby undermining commonality, typicality, and predominance. Def. Br., p. 10. As demonstrated above, class certification does not require "forensic inspection, analysis, and evaluation of each property." Rather, it is Drummond's uniform conduct toward the class members that makes class certification proper. That conduct also caused class-wide radiation impacts. *See* Pl. Br., pp. 4-6 (demonstrating radioactivity permeates the PCA). Drummond's admission leaves no doubt that "the vast majority of the [PCA] has been drastically affected by the phosphate mining process," and that the pollutants are, or may be, potentially harmful or interfere with life or property.

### 4. Feist's Claims Are Typical of, and His Interests Are Aligned With, The Members of The Classes He Seeks to Represent

Drummond's typicality argument has no legal basis. Typicality is satisfied where the plaintiff's claims are based on <u>the same legal theories and same event, practice, or course of conduct</u> as the class members. *See* Pl. Br. 13. Here, as in other environmental cases finding typicality, Feist and the class members are

impacted by the <u>same</u> type of contamination, caused by the <u>same</u> defendant, within the <u>same</u> mine, and giving rise to the <u>same</u> legal claims and interests. *Id*.

Drummond's challenges to typicality on the bases that 1) "Feist claims not to have known that the Development was built on former phosphate land;" 2) "Feist did not purchase the land directly from Drummond;" 3) "Feist has no economic losses or health effects;" and 4) there is no "typical" dose or health impact (Def. Br. 19) have no bearing on Rule 23(a)(3) typicality. "Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *In re Checking Acct.*, 307 F.R.D. at 642. Drummond 1) developed the PCA homes on its former mine, 2) failed to remediate, and 3) failed to warn of the dangerous conditions.  This conduct applies equally to Mr. Feist as to the other PCA property owners. While purely conjectural, even if Mr. Feist suffered no economic losses (as Drummond appears to argue), it is true of the entire class. Drummond fails to explain how this merits issue is anything but typical of the property damage class.

### 5. Opposition to a Class – Especially When Premised on False Information – Does Not Defeat Adequacy

Drummond's challenge to Feist's adequacy is premised foremost on its tired argument that some residents oppose this lawsuit. Def. Br., pp. 19-20. Drummond's argument is factually dubious and legally baseless. *See* pp. 1-2, *supra*. Drummond's secondary challenge to adequacy based on its claim that class members will "be harmed financially by stigmatizing their neighborhood as

a 'contaminated site'" (Def. Br. 19), while also ineffective in defeating adequacy, plainly reveals Drummond's view that the financial harm is real and class-wide.

Citing the affidavits of 20 residents (~2% of PCA properties) (D.E. 155-2) (Def. Ex. 1), Drummond argues the "community" opposes this lawsuit, thus placing Feist and his counsel in conflict with the classes, and undermining adequacy and predominance. Def. Br., p. 1. This "opposition," however, was formed – or manufactured by Drummond – relying on flawed Florida Department of Health ("DOH") data that "significantly underreports" gamma radiation. D.E. 142, n.3 (Plaintiff's Memorandum in Support of Motion for Class Certification) ("Pl. Br."). Specifically, the affidavits demonstrate these "opponents" rely on the flawed DOH data and other misinformation resulting in the false reassurance that radioactivity across the PCA is benign. *See generally*, Def. Ex. 1.[7] Regardless, class certification may not be denied on the basis that

---

[7]Drummond solicited these affidavits beginning in 2018. Def. Ex. 1. Drummond failed to disclose until May 2021 (Pl. Ex. 38) the identity of 12 of the affiants (long after fact discovery ended); withheld the affidavits and attachments through the course of discovery; and failed to ever disclose all but two of the remaining affiants prior to filing its Opposition. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion * * * unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Drummond bears the burden of demonstrating that its failure to disclose was "substantially justified and harmless." *Parrish v. Freightliner*, LLC, 471 F.Supp.2d 1262, 1268 (M.D. Fla. 2006). As demonstrated above, the "opposition" was based on misinformation and false assurances. Plaintiff was entitled to depose these affiants, but was deprived of that opportunity, thereby causing **severe prejudice**. Drummond's contact with class members raises potential ethics concerns given 1) the misleading information and 2) the apparent intent to undermine confidence in class counsel. *See Leidel v. Coinbase, Inc.*, No. 16-81992-CIV, 2019 WL 2578268, at *2 (S.D. Fla. June 24, 2019). Drummond solicited these affidavits as a "personal/professional favor" (Pl. Ex. 39) years before the expert discovery

individuals within the class "would prefer to maintain the status quo and leave violations of their rights [] unremedied." *Groover v. Michelin N. Am., Inc.*, 192 F.R.D. 305, 306 (M.D. Ala. 2000); citing *Jacobi v. Bache & Co., Inc.*, No. 70–3152, 1972 WL 560 at *4 (S.D.N.Y.1972) (class may differ "as to the desirability of a particular remedy * * *, or even desire the maintenance of the status quo"); *Waters v. Barry*, 711 F.Supp. 1125, 1131–32 (D.D.C.1989); *see also* 5-23 MOORE'S FEDERAL PRACTICE – CIVIL §23.25.

### 6. A Class Action is Far Superior to Drummond's Proposal to Have this Court Manage 1,000 Separate Trials of Negative Value Cases

Plaintiff has demonstrated that a class action will save time, effort, and money and will promote uniformity without sacrificing procedural fairness. Pl. Br., pp. 20-21. Failing to demonstrate how anyone could conceivably afford to pursue an individual claim, Drummond, by contrast, argues that superiority fails because these "$75,000" claims warrant 1,000 separate trials. Def. Br., p. 27.

Given the nature of this case, which includes 15 technical experts (to date), voluminous discovery, and thousands of hours of attorney time, individualized trials will inevitably result in inordinately expensive, unmanageable, negative value claims. "The existence of negative value claims is the most compelling reason for finding superiority in a class action." *Arnold v. State Farm Fire & Cas. Co.*, No. 2:17-CV-00148, 2020 WL 6879271, at *10 (S.D. Ala. Nov. 23, 2020), citing

---

revealed that the data underreport radiation levels by 2-5 times. Pl. Br., n.3. Drummond's expert previously offered the opinion that the DOH data (roughly 1,000-2,000 measurements) demonstrate "there is not a risk to human health," **class-wide**. D.E. 24-1, p.8. The addition of Plaintiff's data and correction of the DOH data yields over 100,000 radiation readings within the former mine demonstrating there is indeed a risk to human health *class-wide*.

*Dickens v. GC Servs. Ltd. P'ship*, 706 F. App'x 529, 538 (11th Cir. 2017); *see also* 34 Newberg on Class Actions, §18.40 at 18–138 (3d ed.1992) ("class should not be denied merely because individual claims are large.").

### 7. Individual Damages Calculations Do Not Preclude Class Certification

Drummond's argument that "questions of individual damage calculations will inevitably overwhelm questions common to the class" (Def, Br., p. 16) is inconsistent with its own arguments and is in direct conflict with Eleventh Circuit's command that "individual damages calculations do not preclude class certification." *Carriuolo v. General Motors Co.*, 823 F.3d 977, 988 (2016). This is especially so when, as here, the central liability question is so clearly common to each class member. *Id.* Nothing requires Plaintiff to prove predominance separately as to both liability and damages. *Id.* Citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 133 S. Ct. 1426 (2013), Drummond next argues that an economic regression model is inadequate to calculate damages on a class wide basis, and that Dr. Zabel failed to quantify damages at this time. Def. Br., p. 16. Notwithstanding the fact that Plaintiff need not prove class-wide damages at this time, *Comcast* simply requires that "any model supporting a plaintiff's damages case must be consistent with its liability case." *Id.* Unlike the damages model in *Comcast,* here, Dr. Zabel's hedonic model is tied directly to plaintiff's property

damage claims.[8] "Individual damages calculations do not preclude class certification" under *Comcast*. *Carriuolo*, 823 F.3d at 988.

### 8. Drummond's Opposition to the Rule 23(b)(2) Injunctive Relief Classes has No Legal Foundation

<u>Remediation Class</u>: Drummond's opposition to a 23(b)(2) remediation class is based on the false claims that "Feist seeks massive and radical mandatory relief with no opportunity for class members to opt out." Def. Br., p. 28. Drummond also argues that such relief must be individualized. *Id.* at 29.

Although a Rule 23(b)(2) class member has no *absolute* opt out right, the Court may mandate such a right If the evidence reveals that opposition to cleanup truly exists across the class. *Holmes*, 706 F.2d at 1154. Truthfully, however, nothing about the requested relief is "radical." Radioactivity across the PCA is dangerous necessitating remediation. *See* pp. 8-9, *supra*.

<u>Medical Monitoring</u>: Drummond argues that "dose, length of residence, pre-existing conditions, numerous baseline risk factors, and lack of scientific causation for any individual" undermine the cohesion of the medical monitoring class. Def. Br., p. 30. But, as Plaintiff previously demonstrated, every individual

---

[8]Drummond threatens to challenge Dr. Zabel's widely accepted methodology as unreliable (Def. Br., p. 5), but has not yet done so. Drummond's criticism of the hedonic method for producing varied outcomes proves the model's integrity and Dr. Zabels' unbiased application. See Zabel Rebuttal (D.E. 143-8, Pl. Ex. 18). Dr Zabel did not calculate damages during class certification because it is not a Rule 23 requirement. ***Defendant's expert, by contrast, did calculate damages, but destroyed the results***. Fishkind Tr., 42:1-43:9; 60:5-61:14 (Pl. Ex. 41). Plaintiff will seek appropriate relief based on the destruction of evidence.

living in the PCA for more than two cumulative years has sufficiently increased

risk necessitating medical monitoring. Pl. Br., p. 23.[9]

### 9. The Individualized Issues Cited by Drummond Are Irrelevant to a Rule 23(C)(4) Issues Class

Drummond's reliance on *Rink v. ChemiNova, Inc.*, 203 F.R.D. 648 (M.D. Fla.

2001) to defeat an issues class is misplaced. *Rink* explicitly found that "class-wide

determination of certain issues, particularly in mass tort litigation, may serve the

court's interest in judicial economy and efficiency and conserve the resources of

the parties." At 669. As demonstrated above, the scientific evidence undermines

Drummond's argument that "resolution of this case requires individual testing

and evaluation for any claim of liability." Def. Br. 30. *Martin v. Behr Dayton*

*Thermal Prod. LLC*, 896 F.3d 405 (6th Cir. 2018), cert. denied, 139 S. Ct. 1319 (2019)

sets forth the common issues that may advance the resolution of an

environmental property damage case, like the one at bar. *See* Pl. Br., 24-25.

### IV.    CONCLUSION

For the reasons set forth above, Plaintiff's Motion should be granted.

---

[9] Drummond's criticism of the RESRAD model on the basis that it relies on "hypothetical inputs" and "produces averages" (Def. Br., p. 12) is belied by RESRAD's wide acceptance, reliability and use by the U.S. DOE, U.S. EPA, and the U.S. NRC to evaluate the need for radioactive site cleanups. *See* https://resrad.evs.anl.gov/. In modeling "representative" exposures Mr. Bland followed NCRP and ICRP methods using RESRAD to determine whether remedial action is required. Bland Rebuttal, p. 14. Drummond has neither challenged the reliability of RESRAD nor submitted any evidence that Bland misapplied it. Contrary to Drummond's argument, the use of models such as RESRAD precisely as recommended by radiation protection authorities based on representative rather than individual exposures to determine population risk and the need for remediation is perfectly suited to class-wide application. *Id.;* Def. Br., p. 12.

Dated:   November 12, 2021                Respectfully Submitted,

  /s/ W. Mark Lanier

**THE LANIER LAW FIRM, P.C.**
W. Mark Lanier, Esq. (*pro hac vice*)
Richard D. Meadow, Esq.
Alex Brown, Esq. (*pro hac vice*)
Christopher L. Gadoury, Esq. (*pro hac vice*)
6810 FM 1960 West
Houston, TX 77069
Telephone: (713) 659-5200

**GERMAN RUBENSTEIN, LLP**
Joel M. Rubenstein, Esq.
Steven J. German, Esq.
19 West 44th Street, Suite 1500
New York, NY 10036
Telephone: (212) 704-2020

**NIDEL & NACE PLLC**
Christopher T. Nidel, Esq. (*pro hac vice*)
Jonathan Nace, Esq. (*pro hac vice*)
One Church Street, Suite 802
Rockville, MD 20850
202-780-5153

18

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2021, a true and correct copy of the foregoing Plaintiff's Reply to Defendant Drummond Company, Inc.'s Opposition to Plaintiff's Motion for Class Certification was served electronically on all parties registered to receive electronic notice via the Court's CM/ECF system.

/s/ W. Mark Lanier
W. Mark Lanier