UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN J. JERUE (Dismissed) and
MICHAEL J. FEIST,

    Plaintiffs,

v.                             Case No. 8:17-cv-00587-TPB-AEP

DRUMMOND COMPANY, INC.

    Defendant.
_____

**MOTION FOR PROTECTIVE ORDER TO PROHIBIT
DEFENDANTS AND DEFENSE COUNSEL
FROM COMMUNICATING WITH ABSENT CLASS MEMBERS**

*COMES NOW* Plaintiff, by and through undersigned counsel, and pursuant to Rule 23 and 26 of the Federal Rules of Civil Procedure, moves for an order prohibiting any and all communications between Drummond, any of its agents, servants, employees, lawyers or anyone acting on its behalf with any potential absent class member. In support of this, Plaintiff states the following:

    **I.    INTRODUCTION**

This is an environmental class action related to elevated levels of radiation due to Defendant's efforts to mine phosphate, reclaim the land and develop and sell the same land for residential use once the mining operation had ceased. Plaintiff and the putative classes are individuals who live on this re-developed land, which unknown to them is exposing them to elevated levels of radiation where they live, sleep, eat and recreate. As a result of exposure to this radiation, Plaintiff alleges that he and the classes have been harmed by the loss of value of

1

their properties, loss of the use and enjoyment of their properties, and in the need for medical monitoring for latent disease to which they are now at increased risk of due to exposure to this preventable radiation.

After a long and hard-fought period of discovery (extended in part due to the Coronavirus Pandemic), Plaintiff's motion for class certification was filed on August 20, 2021. *See* Doc. 142. The matter has now been fully briefed and referred to the Honorable Magistrate Anthony E. Porcelli. *See* Doc. 166.

As part of its opposition to the motion for class certification, Drummond attached affidavits from twenty "residents" implicitly alleged to be within the proposed class definition.[1] *See* Doc. 155-2 (Drummond's collection of Affidavits of Residents). The affiants repeatedly claim that the Florida Department of Health ("FDOH") has tested the affiant's individual home and found it to be safe, causing the affiant to believe that the class action lawsuit is meritless. *See id., e.g.*, p. 3 ¶ 6, p. 7 ¶ 4, p. 13 ¶ 5. The record, therefore, clearly demonstrates communications

---

[1] Drummond does not define the affiants as "class members," only as "residents," generally as "the community," or "property owners." *See* Doc. 155, pp. 19, 20, 24, 26. The class definition expressly excludes "Drummonds' officers, directors, agents, employees and members of their immediate families; and the judicial officers to whom this case is assigned their staff, and the members of their immediate families." Doc. 36 ¶ 113. Upon information and belief, numerous employees of Drummond reside within the class area, but are not included in the class definition. Without further discovery of these affiants, Plaintiff cannot rule out that these affiants are excluded from the class definition and are, therefore, not class members. But this would indicate that Drummond had affidavits signed and filed to mislead Plaintiff and the Court about their status as class members for the purpose of giving a misimpression about the desires of the actual class members to proceed for the purpose of defeating class certification. Plaintiff and counsel **cannot and do not make that assertion** at this time; Plaintiff states this possibility only to explain Plaintiff's supposition that the affiants are absent class members. This brief assumes Drummond and its attorneys have a good faith belief that these affiants are within at least one class definition for which certification was moved.

between Drummond and its counsel with absent class members, specifically regarding the data that the FDOH gathered from a Radeye PRD device. This data and the affiants' purported understanding of said data does not comport with Defendant's own understanding and evaluation of the FDOH testing and those results.

Drummond, through counsel in its filed opposition to the motion for class certification, expressly acknowledges that the testing values expressed by the FDOH do not accurately quantify or represent a resident's exposure to radiation at their home. The FDOH uses a specific device known as a "Radeye PRD" which provides a reading of a limited set of certain radiation exposures and underreports that radiation which it does detect.[2] When the FDOH surveyed any absent class member's residence (including the affiants' residences), it used this device and presented the raw number as evidence of exposure and/or lack thereof.

The parties do not dispute that the Radeye PRD underreports radiation exposure to the absent class members, only quibbling about the appropriate "correction factor" needed to apply to the Radeye PRD result to identify true radiation exposure. In its opposition to the motion for class certification, Drummond specifically acknowledges its own expert testimony of Dr. Randy

---

[2] The Radeye PRD does not detect "cosmic radiation" at all. It also intentionally suppresses what it deems naturally occurring background radiation from soils, including the types of radiation at issue in this case. To understand the actual levels of radiation exposure in the Class Area versus background levels, all forms of radiation, including cosmic and gamma radiation from the soil must be accounted for in order to be compared to measures of natural background.

Whicker, a board certified health physicist, found that the Radeye PRD "underreports gamma by about 20%:

> 8. Randy Whicker - Randy Whicker found that the RadEye is a reliable instrument, but **underreports gamma by about 20%.**

Doc. 155, p. 15 (emphasis added).  Dr. Whicker's own deposition testimony, which Defendant relies on for their opposition to class cert and asserts as an accurate means of evaluating the resident's exposure, further confirms that the Radeye device does not accurately quantify the radiation exposure of any given resident.

> Q.  The RadEye is also biased low when it's -- when its readings are used to detect total gamma dose for two reasons:  One, because it underreports the terrestrial, and two, because it does not report the cosmic, correct?
>
> A.  Correct.
>
> Q.  Now, you agree that the RadEye cannot be used to perform gamma surveys to accurately identify true dose rates, correct?
>
> A.  I think the RadEye can be used indirectly to determine good estimates of exposure rate, but **the RadEye cannot be used if you look at the – the readout on the RadEye during a survey or during a measurement.**  It will be reading a bit low compared to the true terrestrial exposure rate.

Doc. 161-1, p. 24:05-19.  Dr. Whicker further testified regarding the measurements that the affiants are relying upon:

> Q.  Okay.  And for both of those reasons, **the data from the RadEye needs to be corrected before it can be relied on to identify accurate true dose rates, total dose rates, correct?**
>
> **A.  That is true.**
>
> Q.  Okay.  And therefore, by simple logic, the RadEye does not provide accurate true total dose rates, correct?
>
> MR. GRADY:  Object to the form.

> A. It does not provide readings that are comparable to our best measure of the true dose rate, which is -- can be obtained with an HPIC reference instrument.

*Id.* p. 26:10-22. Drummond and its single expert who reviewed and opined on the relevant interpretations of the FDOH Radeye device agree that the Radeye "cannot be used" to understand true exposure rates for the class members. *Supra, id.* p. 24:05-19.

Nevertheless, the record clearly reflects that Drummond and its counsel had communications with absent class members and failed to accurately inform these class members that the FDOH data they were relying on was not accurate. Instead, Drummond willingly took advantage of this misunderstanding and eagerly allowed the misunderstanding to propagate to the detriment of the affiants' own health risk profile, purely for the purpose of formulating some misleading argument in opposition to class certification.

## II. LEGAL STANDARD

Rule 23 permits the Court to issue orders that control the conduct of a class action proceeding.

> (1) *In General.* In conducting an action under this rule, the court may issue orders that:
>
> (A) determine the course of proceedings or prescribe measures to prevent undue repetition or complication in presenting evidence or argument;
>
> (B) require—to protect class members and fairly conduct the action—giving appropriate notice to some or all class members of:
> (i) any step in the action;
> (ii) the proposed extent of the judgment; or

>> (iii) the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action;
>
> (C) impose conditions on the representative parties or on intervenors;
>
> (D) require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly; or
>
> (E) deal with similar procedural matters.

F. R. Civ. P. 23(d).  Similarly, Rule 26

> The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (A) forbidding the disclosure or discovery;
>
> (B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;
>
> (C) prescribing a discovery method other than the one selected by the party seeking discovery;
>
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

F. R. Civ. P. 26(c)(1).  These rules empower the Court to issue orders prohibiting or restricting communications between litigants and their counsel with absent class members.

> Citing to Rule 23, the Supreme Court of the United States has ruled:
>
> Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties. But this discretion is not unlimited, and indeed is bounded by the relevant provisions of the Federal Rules.

*Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981) (citing *Eisen* v. *Carlisle Jacquelin*, 417 U.S. 156 (1974)).  *Bernard* further instructed "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id*. at 101.  The district court must consider both the potential abuses and the rights of the litigants such that "such a weighing — identifying the potential abuses being addressed — should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *Id*. at 102.

District courts in the Eleventh Circuit have routinely applied a two-prong test in motions seeking to limit or prohibit communications with absent class members prior to certification:

> [A] two-pronged test must be met before a court may restrict communication. First, a communication must have occurred or be threatened to occur. Next, the form of communication at issue must be abusive in that "it threatens the proper functioning of the litigation."

*Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 554, 561 (S.D. Fla. 2008) (quoting *Cox Nuclear Medicine v. Gold Cup Coffee Services, Inc.*, 214 F.R.D. 696, 697, 698 (S.D.Ala.2003)); *see also Abdul-Rasheed v. KableLink Commc'ns, LLC*, No. 8:13-cv-879-T-24MAP, 2013 WL 5954785, at *6 (M.D. Fla. Nov. 7, 2013*); Leidel v. Coinbase, Inc.*, Civil No. 16-81992-CIV-Marra/Matthewman, 2019 WL 1585137

 (S.D. Fla. June 24, 2019)

## III. ARGUMENT

### a. There is a clear record of communication between Defendant and the absent class members.

Defendant has attached to the unsealed record in this case, twenty affidavits from residents of the Class Area which it alleges are absent class members. These are *prima facie* evidence of communications and that the first prong of the court's analysis has been met. Doc. 155-2. Each of the affidavits states that the affiant is not represented by counsel but has communicated with Defendant's counsel. The affidavits themselves are largely boilerplate recitations, implying the drafting of such affidavits by Drummond's counsel for consistency.

There can be no legitimate dispute that Drummond, through counsel, has already communicated with absent class members regarding the merits of this case. And Drummond has refused to strike or withdraw these affidavits and correct the misunderstandings of the absent class members. At the same time, Drummond refuses to refrain from communicating with potential class members in the future in this manner; therefore, the threat of future communication likewise remains.

### b. The communication between Defendant and the absent class members threatens the proper functioning of the litigation.

The misleading communications and refusal to truthfully articulate the meaning of the Radeye PRD results to absent class members threatens the proper function of the litigation:

> Communications that have been found to be violative of the principles of Rule 23 include misleading communications to class members regarding the litigation, communications that

8

> misrepresent the status or effect of the pending action, communications that coerce prospective class members into excluding themselves from the litigation, and communications that undermine cooperation with or confidence in class counsel.

*Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 554, 561 (S.D. Fla. 2008) (citing *Hampton Hardware, Inc. v. Cotter & Company, Inc.,*156 F.R.D. 630, 632 (N.D.Tx.1994) (citations omitted); *Cox,* 214 F.R.D. at 698; *see also Jubinville v. Hill's Pet Nutrition, Inc.*, C.A. No. 19-74WES, at *13 (D.R.I. Apr. 12, 2019) (quoting *id.*).

Material omissions have expressly been found to violate Rule 23 and command an order prohibiting communication with a litigant's counsel. "[A]busive communications are those that are false, misleading or confusing, **contain material omissions**, or are coercive or intimidating." *Nakamura v. Wells Fargo Bank, Nat'l Ass'n*, Case No. 17-4029-DDC-GEB, 2018 WL 994706, at *4 (D. Kan. Feb. 21, 2018) (emphasis added). Defendant's communications with absent class members are the type of egregious misleading communication that demand a protective order.

Critically, as discussed above, it is undisputed by the litigants that the Radeye PRD's numerical result is not an accurate assessment of radiation exposure to an absent class member. While the affidavits are replete with references to the FDOH testing by the Radeye PRD, there is no discussion of correction factors or true exposure rates of radiation to the affiant. Numerous affidavits even refer to a comparison to background, wrongfully asserting that the FDOH result can be applied in an apples-to-apples fashion to the known background rate. *See, e.g.* Doc. 155-2, p. 10 (affiant's attachment of FDOH letter referencing comparison to

background).  Drummond knows the FDOH's use of the Radeye PRD device as a comparison to background is faulty, but it and it's counsel omitted this material fact in its consultations with these absent class members and its drafting of these misleading affidavits – all for a perceived gain in litigation to the detriment of the class members' health.

The affidavits also demonstrate clear evidence of materially misleading communications with absent class members for the purpose of "undermining corporation with or confidence in class counsel." *Jones* at 561.  For example, one affiant asserts the Plaintiff's counsel have made "reckless statements and false accusations…" demonstrating clearly that Drummond and defense counsel were willing to omit material information in communications with absent proposed class members for the purpose of using the misunderstanding of the interpretation of the Radeye PRD device results to undermine confidence in class counsel.  Doc. 155-2, p. 13.

The second prong of the Court's analysis has also been shown based upon evidence in the record.  Defendant admits in pleadings to this Court that the Radeye PRD numerical values are not representative of a resident's exposure to radiation.  Defendant's expert admits that the Radeye PRD numerical value "cannot" be used to assess true exposure rate.  Nevertheless, Defendant engaged in communications with absent class members to mislead them as to the merits of the class action and the veracity and integrity of the proposed class counsel.

Therefore, the Court must issue an order prohibiting or severely limiting Defendant or its counsel's ability to speak with absent class members.

### c. The Court should prohibit all communication between Defendant or its counsel with any absent class member.

In crafting an Order, the Court should weigh the need for such an order against the rights of the parties to conduct discovery. *Supra* § II. Given the current posture of the case, the egregious factual omissions by Defendant and its counsel to absent class members, and the inherent risk in mispresenting the risks to the absent class members, the Court should prohibit any and all communications between Drummond, any of its agents, servants, employees, lawyers or anyone acting on its behalf with any potential absent class member.

First, the current posture of the case indicates that such an order does not severely harm Drummond's ability to conduct free and fair discovery. The parties have conducted discovery on the issue of class certification for years. Defendant has gathered whatever data or information it already needed to from any absent class member and has submitted expert reports regarding that discoverable information. At this stage, Drummond's rights are not heavily infringed by instructing them to refrain from any further communication with absent class members. This is further bolstered by the fact that in the event class certification is granted, the absent class members should be protected from any such communication as a general matter of ethics. *McKenzie Law Firm, P.A. v. Ruby Receptionists, Inc.*, No. 3:18-cv-1921-SI, at *4 (D. Or. May 29, 2020) (quoting MANUAL FOR COMPLEX LITIGATION § 21.33 (4th ed. 2004) ("Once a class has been certified, the rules governing communications apply as though each class member is a client of the class counsel.") (footnote omitted in original); *Good v. W.*

11

*Va.-Am. Water Co.*, Civil Action No.: 2:14-01374, at *5-6 (S.D.W. Va. Oct. 26, 2016) (quoting *Fulco v. Continental Cablevision, Inc.*, 789 F. Supp. 45, 47 (D. Mass. 1992) (quoting *Bower v. Bunker Hill Company*, 689 F. Supp. 1032, 1033 (E.D. Wash. 1985))) ("Following certification of a class action, 'an attorney-client relationship arises between all members of the class and class counsel.'").

Second, the material omissions are serious misstatements of the merits of the case. Drummond and its counsel admit that the Radeye PRD does not provide an apples-to-apples comparison of radiation exposure in the class area to the asserted Florida background. Drummond knows this. It knew that the affiant class members did not understand it. Drummond and counsel chose not to correct this clear misunderstanding. Drummond can try to parse the "reliability" of the Radeye PRD in whatever word-salad it can concoct, but neither Drummond nor its lawyers can assert to this Court specifically that "the readout from the Radeye PRD is an accurate reflection of a resident's true exposure to radiation." It is not. And Drummond knows it is not.

Third and finally, these communications are a danger to the class members and even to the specific affiants who already communicated with Drummond and counsel. Obviously, these twenty affidavits were used to prevent absent class members from obtaining class certification which would allow them to engage in a claims process in the event of recovery. However, each of the affiant's own statements is being offered to defeat class certification that would benefit not only the class at large, but ***even the affiants themselves***. That is, Drummond and counsel have taken advantage of the affiant's misunderstandings for Drummond's

own benefit, but to the detriment of the very individuals with whom Drummond's counsel elicited these statements. Absent class members and the affiants themselves must be protected from Drummond's willingness to continue to omit material information about the results that the class members are receiving. These affidavits harm the class at large and even the individual affiants because they are misunderstandings of highly technical and specialized knowledge of radiation testing and exposure. But the intent in gaining and using them was to harm the class as demonstrated by Drummond's own opposition.

Radiation exposure is carcinogenic. Drummond has shown that it is willing to allow people to wrongly interpret data about their individual likelihood of increasing their increased risk of cancer for the purpose of defeating the class certification motion. This has been done to harm the class via false statements and misunderstandings of class members that Drummond knew were misunderstandings but intentionally refused to correct.

Therefore, an order prohibiting any and all communications between Drummond, any of its agents, servants, employees, lawyers or anyone acting on its behalf with any potential absent class member.

## IV. CONCLUSION

**WHEREFORE**, Plaintiff moves for a protective order prohibiting any and all communications between Drummond, any of its agents, servants, employees, lawyers or anyone acting on its behalf with any potential absent class member. In the alternative, Plaintiff's move for an order otherwise protecting the absent class members from misleading or confusing communications between absent class

members and Drummond or any of its agents, servants, employees, lawyers or anyone acting on its behalf.

Respectfully Submitted,

**NIDEL & NACE PLLC**

/s/ Jonathan B. Nace
Jonathan Nace, Esq. (*pro hac vice*)
Christopher T. Nidel, Esq. (*pro hac vice*)
One Church Street, Suite 802
Rockville, MD 20850
202-780-5153

**GERMAN RUBENSTEIN, LLP**
Joel M. Rubenstein, Esq.
Steven J. German, Esq.
19 West 44th Street, Suite 1500
New York, NY 10036
Telephone: (212) 704-2020

**THE LANIER LAW FIRM, P.C.**
W. Mark Lanier, Esq. (*pro hac vice*)
Richard D. Meadow, Esq.
Alex Brown, Esq. (*pro hac vice*)
Christopher L. Gadoury, Esq. (*pro hac vice*)
6810 FM 1960 West
Houston, TX 77069
Telephone: (713) 659-5200

**Local Rule 3.01(g) Certification**

I hereby certify that, counsel for the parties participated in a telephonic meeting and conferred on the subject of the within Motion. The parties were unable to agree to a resolution of the issues herein and plaintiffs' counsel advised that it would be filing the within motion.

/s/ Jonathan B. Nace
Jonathan Nace, Esq. (*pro hac vice*)

**CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2021, a true and correct copy of the foregoing was served electronically on the Court and all parties registered to receive electronic notice via the Court's CM/ECF system.

/s/ Jonathan B. Nace
Jonathan Nace, Esq. (*pro hac vice*)