UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN J. JERUE (Dismissed) and
MICHAEL J. FEIST,

      Plaintiff,

v.                                              Case No. 8:17-CV-00587-TPB-AEP

DRUMMOND COMPANY, INC.,

      Defendant.
_____/

## DEFENDANT DRUMMOND COMPANY, INC.'S MOTION FOR PROTECTIVE ORDER, SANCTIONS, AND OTHER RELIEF FOR DISCOVERY ABUSE BY PLAINTIFF FEIST'S COUNSEL

Defendant, Drummond Company, Inc. ("Drummond" or "Defendant"), by and through its undersigned counsel, and pursuant to Rule 30 of the Federal Rules of Civil Procedure, hereby files Defendant's Motion for Protective Order, Sanctions, and Other Relief for Discovery Abuse by Plaintiff Feist's Counsel (the "Motion"). Defendant also seeks its reasonable attorneys' fees and costs for attending excessively long and abusive depositions and for filing this Motion.

This motion relates to the depositions of individual residents of Oakbridge and Grasslands who oppose to Feist's motion to certify a class. Feist's counsel are conducting these depositions in a manner that intimidates, humiliates, and abuses the very residents that Feist seeks to represent as putative "class members" in this

case. The Court should sanction Feist's counsel for their abusive conduct and require that any further depositions be conducted under appropriate supervision. At the current rate of approximately 5 to 7 hours per deposition, it would take over 100 hours to complete the resident depositions and unreasonably delay a ruling on whether to certify a class. This was clearly not contemplated by the Court. At this point, there are no pending subpoenas for deposition and no notices of deposition. The parties have informally cleared dates in early July, 2022. However, Defendant seeks guidance from the Court so that other residents are not required to endure such appalling treatment and delay by Feist's counsel.

These depositions were conducted by Feist's counsel, Mr. Christopher Nidel, who is admitted pro hac. Mr. Nidel and other out of state counsel were sponsored by Mr. Neal O'Toole, a member of the bar of the Middle District. After his initial appearance in the case, Mr. O'Toole has been largely absent and has failed to supervise the pro hac lawyers.

Defendant requests that the Court suspend the depositions in order to conduct a hearing in the matter raised in this Motion. This is consistent with the current Middle District Discovery Handbook, Section II, Depositions, B.2, Objections, February 1, 2021 ("Handbook"). The Handbook states that questions may be suspended in order "to present a motion to show that the examination is being conducted in bad faith or in such a manner as unreasonably to annoy, embarrass, or

oppress the deponent or party." *Id.* at II. B.2, p. 9. That is exactly what is happening here. Further, the Handbook states that the parties may request the United States Magistrate Judge to resolve "an intractable dispute that has arisen during the deposition." Handbook at II. B.5, p. 10. Defendant is following this procedure to request that the Court impose restrictions on any upcoming resident depositions. Depositions, particularly of unrepresented and older individuals, should only proceed with the highest degree of professionalism expected in the Middle District of Florida. See Handbook at I. A.1, p. 1.

The depositions relate to approximately twenty affidavits from residents and landowners in the Oakbridge and Grasslands communities in opposition to Feist's Motion for Class Certification. Residents initially became concerned after receiving a letter from Mr. O'Toole written to each homeowner in Grasslands and Oakbridge. See Exhibit A. The letter asserted, without individual testing or other proof, that radiation levels for "homeowners (both inside their homes and in their yards) … create well-known and documented health risks including CANCER and DNA CHANGES OR MUTATIONS." Exhibit A at 1. Residents viewed this letter with concern, and a subsequent promotional meeting organized by Feist's counsel reinforced Plaintiff's scare tactics. Residents said that Feist's allegations and publicity campaign created a "black cloud over our community." Exhibit B at 2, line 13. In response, residents organized their own "grassroots" group to investigate and

address these assertions. Exhibit B at 10-11, lines 15, 1-5. One resident said: "The plaintiff's attorneys held a town hall meeting last month, and after that town hall meeting, several people came up to me, … and said, hey, why don't we hold a town hall meeting to defend ourselves." Exhibit B at 4, lines 20-25. They invited officials from the Florida Department of Health ("FDOH") and others to address the group. Their conclusion was that there was no documented health risk in Grasslands and Oakbridge. The FDOH and individual residents also conducted their own tests. As stated at their meeting: "Now, this is after hundreds of tests, dozens of tests have been taken on people's properties. So even though the assault continues, we are here tonight to tell you everything is okay." Exhibit B at 5, lines 6-10. The Residents were also concerned that the lawsuit and false allegations would have a detrimental effect on their homes and neighborhoods. Referring to the lawsuit and reckless allegations, one resident said: "It was a kick in the stomach. It really rocked our world, because we all were really proud and still are of our homes and where we live, but that headline has kind of put a black cloud over our community, and we are still trying to recover." Exhibit B at 2, lines 9-15. Certain of the residents later gave affidavits in which they expressed grave concerns that certification of a class would unfairly brand their neighborhood as radioactive "toxic wastelands" which is untrue, yet heavily promoted by Feist. Second Amended Complaint at ¶20; Hensel Affidavit at ¶6; Herring Affidavit at ¶3. They opposed class certification because it would

give some official credence to Feist's outlandish and false allegations. This could have a serious negative effect on residents' primary assets: their homes and home values. Residents not only voiced substantial conflicts with Feist's false allegations of "contamination", but also took issue with Feist's other unsupported allegations. For example, residents stated that they were aware that the development was built on former phosphate land, there was no fraud or misrepresentation, and they vigorously oppose massive removal of trees, landscaping, driveways, patios, decks, lawns, and other infrastructure under the guise of "remediation." Mr. Loar also testified that after talking with approximately 100 residents, no one reported any adverse health effects, such as cancer, from living in these communities Ken Loar depo. at p. 257, lines 20-25. After five years of litigating this case, and based on decades of continuous residential use, Feist's counsel have failed to document a single case of cancer attributable to environmental conditions in Oakbridge or Grasslands, which have no harmful conditions. This supports the residents' opposition to potentially destructive class certification.

    Feist's counsel, who supposedly have a fiduciary duty to protect the residents' interests, moved to silence the residents' voices by attempting to strike their affidavits. In an Order of January 26, 2022, the Court denied Feist's request to strike the affidavits, but allowed Feist's counsel to take the depositions of residents who submitted affidavits. After two months of delay, Feist's counsel served

5

approximately 24 subpoenas for documents in March, 2022, but not for depositions. After three more months of delay by Feist's counsel, the depositions began June 14 with the day-long depositions of two residents, Mr. Loar and Mr. Hensel, (nearly five months after this Court's Order).  See deposition transcripts, Exhibits C-D.  These residents submitted relatively short affidavits outlining their opposition, harm to the community, and conflict with Feist and his counsel.  The residents maintained and further supported their position in the depositions.  In return for their truthful testimony, these residents have been subjected to lengthy, irrelevant, sarcastic, and abusive tactics at the depositions.  As counsel for Defendant stated on the record, the abusive tactics have gone too far.  Hensel depo. at 474-476.  For example, Feist's counsel spent approximately five to six hours berating Mr. Loar with over 265 pages of direct and redirect questioning. See Exhibit C.  The questioning went far afield of Mr. Loar's two-page affidavit.  Ultimately, Feist's counsel tried to force Mr. Loar, under oath, to commit to opt out of any potential future certified class.  Feist's counsel asked: "Will you … since you don't believe that there are high levels of radiation … will you commit now under oath to opt out of whatever the plaintiff's lawyers get today?"  Loar depo. at 334-335.  Feist's counsel later asked: "Are you agreeing to opt out of this class?" Loar depo. at 336, line 10.  This was a misleading and abusive tactic which was totally inappropriate, especially with an older unrepresented individual.  Also, as Feist's counsel well knows, a future hypothetical

6

opt-out cannot undo the damage of a class action that brands residents' homes as toxic, contaminated, unlivable, and in need of widespread and potentially destructive "remediation." Despite this abusive treatment, Mr. Loar testified that he had serious conflicts with Mr. Feist and his counsel, and was not aware of harmful conditions on his property. Loar depo. at 257, 267. Feist's counsel also tried to humiliate Mr. Loar with questions about an individual unrelated to the parties who faced unrelated criminal charges. In response to Plaintiff's insinuations, Mr. Loar stated bluntly: "On the other hand, to be perfectly right about it, what the hell does that have to do with knowing anything about radiation?" Loar depo. at 147, lines 2-4. Mr. Loar also confirmed that the individual in question " knows radiation cold," despite his unrelated issues. *Id*. at line 7. Counsel also got physically close to Mr. Loar's face in order to intimidate him. As Defendant's counsel, Mr. Balogh, observed when it was happening: "He then started talking, and then you leaned right into his face and made him quit talking." Loar depo. at 326, lines 14-16. Feist's counsel then asked Mr. Loar: "Did you feel that I leaned into your face?" *Id.* at line 22. Mr. Loar replied, "I tell you what, you were all over my… go right ahead, though, and ask that question again without leaning into my face." *Id.* at lines 23-25. The obvious purpose was to intimidate Mr. Loar. This deposition alone demonstrates the intense antagonism that Feist's counsel has towards the residents. This disqualifies Feist and his counsel

because of conflicts under Rule 23(a)(4) and because individual issues predominate under Rule 23(b)(3), and because a class action is not superior.

The next day, Feist's counsel took the deposition of Mr. Hensel and questioned him for seven hours until 6:30 p.m. The deposition transcript consists of 471 pages of direct by Feist's counsel. See Exhibit D. Questions went far beyond Mr. Hensel's short 5-page affidavit and even accused Mrs. Hensel of falsifying radon test data. After being wrongly accused of lying, Mr. Hensel said: "So I am the one on trial here?" *Id.* at 400, lines 9-10. Feist again attempted to impugn Mr. Hensel's integrity by accusing him of joining a meeting with the individual mentioned earlier who has since been indicted on matters completely unrelated to these proceedings. Hensel depo. at 158. Counsel also obtained attorney-client information that may have been inadvertently produced by Mr. Hensel and questioned him in detail about legal advice that Mr. Hensel received from his own independent lawyer. Hensel depo. at 381-383. This clearly violated Mr. Hensel's attorney-client rights. Mr. Hensel was not represented at the deposition by his counsel, and Feist's counsel refused to return Hensel's inadvertently produced privileged documents. Feist's counsel also chastised Mr. Hensel for seeking legal advice about remedies residents may have against Feist or his counsel resulting from Feist's false accusations in this case. Feist's counsel also raised extraneous, false, and unrelated allegations concerning Drummond. Mr. Hensel testified in detail that he and his wife are satisfied with the

8

evaluation by the Florida Department of Health, testing by residents, and oppose Feist's tactics and harmful media campaign. Hensel depo. at 122, lines 23-25; p. 123-130. Feist's counsel also berated Mr. Hensel sarcastically for not having expertise in radiation. Mr. Hensel was clearly upset over the barrage of accusations and candidly stated: "It's very difficult to come to a conclusion when you've got a very skewed side versus so many other opinions that are out there. And none of them are being refuted … other than you're trying to make me look stupid." Hensel depo. at 448, lines 1-7. After further abuse at the hands of Feist's counsel, Mr. Hensel said that while he was not a radiation expert, "I can smell a rat." Hensel depo. at 113, line 14. Feist's counsel then made several more sarcastic insinuations asking Mr. Hensel if he had "training" in being able to smell a rat. Feist's counsel said: "No training in radiation? … No training in epidemiology? … No training in sniffing animals?" Hensel depo. at 113, lines 12-19. The parties then had the following exchange:

> Q. You just said you smelled a rat.
> A. Okay
> \*\*\*
> Q. No training in that?
> \*\*\*
> The witness: Lots of training there, yeah, absolutely.

Hensel depo. at 113, lines 12-25; 114, lines 106.

The obvious purpose of Feist's relentless tactics is to intimidate, harass, and punish residents who have the courage to speak up and protect their valuable homes

9

and neighborhood. In addition to the examples above, Defendant's counsel, Mr. Grady, was present at the depositions and has provided a summary of abusive conduct that occurred. Exhibit E attached. Defendant is seriously concerned that these punishing depositions will send a shock wave to the remaining residents who provided affidavits. Counsel for Defendant expressed this concern at the deposition of Mr. Hensel and followed up in a written request that residents be treated with respect and dignity. See Composite Exhibit F, letter of June 20, 2011. Defendant's counsel followed up this written request by addressing the Court in a status conference on Wednesday, June 22, 2022. At that point the Court indicated that a written motion may be in order. Counsel for the parties met outside the courtroom after the status conference to address the issues. Counsel for Defendant expressed their serious concerns about conduct during the depositions and hoped that this discussion would lead to a meaningful resolution of this issue. Instead, this request has fallen on deaf ears. Feist's counsel have now stated that they will issue subpoenas in order to resume the depositions without changing their abusive tactics. See Exhibit F, letter of June 24, 2022. Their only proposed concession was to limit their direct examination to three and one-half hours on the express condition that Defendant would be limited to fifteen minutes to "redirect and clean up testimony that we address in our direct examination." See Exhibit F, letter of June 17, 2022.

This is obviously unacceptable for the reasons expressed in Mr. Grady's June 20, 2022 letter contained in Exhibit F and in this Motion.

Finally, the depositions were conducted by Feist's counsel in a confusing and unsettling atmosphere. Feist's counsel repeatedly raised his voice to intimidate the witness. He also threatened Mr. Hensel that "we're going to be here for two days, three days," if Hensel did not answer the way counsel wanted. Hensel depo. at 100, lines 17-18. Feist's counsel also failed to share full exhibits with the witness and only exhibited portions of detailed technical material on a computer screen. The effect, as Mr. Hensel put it, was to emphasize only Feist's point of view in an unfair attempt to denigrate the residents. Hensel depo. at 448.

Feist's counsel's behavior is shocking and abusive. They have shown no respect or consideration towards the very residents who are supposedly members of the proposed class. This demonstrates their intense hostility and antagonism toward the alleged class and is further grounds to deny class certification. Counsel have also attempted to bully residents and solicit opt outs from any future hypothetical class. Feist's counsel's attempt to solicit opt outs violates the ruling in *Kleiner v. First National Bank of Atlanta*, 751 F. 2d 1193 (11th Cir. 1985). In *Kleiner*, the Defendant bank attempted to solicit opt outs in a certified settlement class in order to reduce its potential payout. The Eleventh Circuit ruled that this conduct violated the Court's orders, levied a fine, and disqualified the bank's counsel. The Eleventh Circuit ruled

11

that the district court "had ample discretion" to sanction the bank for its improper conduct. To be clear, this decision was made in a certified class with formal notice and opt-out provisions. The Bank's conduct was designed to circumvent the court approved settlement and the court's orders on class notice and opt outs. Feist's case has not been certified and Defendant vigorously opposes class certification. Feist's counsel are therefore attempting to circumvent Rule 23 and Eleventh Circuit law by soliciting pre-emptive opt-outs as a means of "neutralizing" residents' opposition to class certification. In this respect, the case is similar to *Jackson v. Motel 6 Multi Purpose, Inc.,* 130 F. 3d 999 (11th Cir. 1997), in which class certification was reversed by the Eleventh Circuit. In that case, plaintiff's counsel attempted to circumvent Rule 23 by sending a "notice" to potential class members prior to a ruling on class certification. This Court has cited the *Jackson* case with approval to illustrate when the "predominance" requirement of Rule 23(b)(3) has not been met. For example, in the recent case of *Haines v. Fidelity Nat'l Title of Fla., Inc.*, 2022 WL 1095961*14 (M.D. Fla. Feb. 17, 2022), this Court stated that Rule 23 predominance "is perhaps the central and overriding prerequisite for a Rule 23(b)(3) class." Quoting *Vega*, 564 F.3d at 1278. As this Court stated: "Predominance requires more than just the presence of common issues. The common issues must outweigh and predominate over any individual issues…." *Id.* *14. The resident affidavits and deposition testimony amply demonstrate that individual issues

predominate over any alleged common issues. Feist's counsel's conduct in the depositions is an attempt to bully and intimidate the residents who have raised individual issues that predominate over alleged common issues. It also shows antagonism under Rule 23(a)(4) and that a class is not superior. This Court should impose sanctions for abusing residents and improperly soliciting hypothetical potential future opt outs in an effort to intimidate and silence residents who have a far greater stake in the outcome of this case than Plaintiff's counsel. Residents believe that they alone should make the decision about how to proceed with matters affecting them and their homes. They are unwilling to allow Feist's counsel to dictate the course of events or harm their interests. Residents should not be intimidated or abused for speaking up.

     Defendant requests that Feist's counsel be disqualified from asserting a class action because they have shown open antagonism to putative class members, engaged in abusive deposition tactics, and have solicited future potential opt outs in violation of *Kleiner*. In addition, to the extent that resident depositions continue, Feist's counsel should be required to conduct any remaining depositions under the supervision of the Court or a discovery master, and to refrain from the abusive discovery tactics engaged in so far.

## Rule 3.01(g) Certification

The undersigned certifies that they have conferred with counsel for Plaintiff in several written and one in-person meeting (on June 22, 2022) at the Federal Courthouse in a good-faith effort to resolve the issues raised by Defendant's Motion, and the parties have been unable to resolve this discovery dispute.

HOLLAND & KNIGHT LLP

/s/ Charles Wachter
Charles Wachter
Florida Bar No. 509418
charles.wachter@hklaw.com
Frederick J. Grady
Florida Bar No. 437980
fred.grady@hklaw.com
Joseph H. Varner, III
Florida Bar No. 394904
joe.varner@hklaw.com
100 N. Tampa Street, Suite 4100
Tampa, FL  33602-3644
Telephone: (813) 227-8500

and

Bryan O. Balogh (Admitted Pro Hac Vice)
Burr & Forman LLP
420 North 20th Street
Suite 3400
Birmingham, AL 35203
Telephone:  (205) 458-5469
Facsimile:  (205) 458-5100

*Trial Counsel for Defendant*